298 So.2d 194 (1974)
Bertram G. HORN, Appellant,
v.
STATE of Florida, Appellee.
No. T-371.
District Court of Appeal of Florida, First District.
July 2, 1974.
Rehearing Denied August 6, 1974.
*195 Richard W. Ervin, III, Public Defender, and David J. Busch, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
BOYER, Judge.
Appellant, defendant below, appeals his conviction of murder in the second degree.
The facts relative to our determination of the point before us are not in dispute.
On August 19, 1972 a badly decomposed body was discovered in an isolated section of St. Johns County. An autopsy revealed the body to be that of a black female, death having been caused by a bullet wound in the chest eight to twelve days prior to the autopsy. Fingerprints revealed the body to be that of one Gloria Horn, estranged wife of appellant.
The decedent's mother testified that she had last seen her daughter on the evening of August 10, 1972 when she took her to work at Gilmer's Nursing Home in St. Augustine, Florida, where she was a nurse's aide working the shift from 11:00 p.m. to 7:30 a.m. Gloria had been living with her mother in St. Augustine while the defendant, appellant here, had been living in Daytona.
One Joyce Walker, also employed as a nurse's aide at Gilmer's, testified that at approximately 5:00 a.m. on the morning of August 11, 1972, Gloria Horn was told by a nurse that she had a telephone call. There were two nursing stations in the L-shaped nursing home, each containing a telephone, one of which was an extension of the other. When Gloria lifted the telephone receiver at one station to accept the call of which she had been informed by the nurse, Joyce Walker, who had been conversing with Gloria when the call came through, lifted the telephone receiver at the other station without Gloria's knowledge. Witness Walker testified that she did this because she was "being nosey" *196 and was "eavesdropping". She further testified that she recognized the voice of the caller as that of the defendant (although she had never before heard the defendant's voice and only recognized it after commencement of the trial while she was sitting in the front row of the courtroom and heard the defendant talking to someone at the attorney's table) and that he said:
"`Hello, Glo,' and she [Gloria] spoke and then he said, `well, I am at the Palms,' he said, `I will be leaving this morning, I have two months money for' her and asked what time you get off and she said, `7:30' and at that point I hung up."
Another nurse's aide testified that the last time she saw Gloria was about 7:30 a.m. August 11, 1972 at Gilmer's parking lot at which time Gloria was getting off from work and heading south towards the Palms Motel.
The defendant denied killing his wife and adduced testimony from several witnesses supporting his alibi that he was elsewhere at the time and on the day that Gloria received the telephone call which was overheard by witness Walker.
The sole issue before us relates to the admissibility of the testimony of Joyce Walker relative to the telephone conversation which she allegedly overheard.
There is no question but that the testimony of Joyce Walker was relevant, material, significant and if wrongfully admitted, extremely prejudicial. It tended to bolster the State's contention that on the morning of August 11, 1972 the appellant was awaiting the arrival of his wife at the Palms Motel so that he could kill her, all of which is contrary to his alibi defense that he was engaged in various other activities in the company of other persons at that crucial time.
Appellant first contends that Joyce Walker's testimony violated the privilege of confidential communications between husband and wife. We find that contention to be without merit. Testimony of a third person who overhears a confidential communication is admissible. (Wigmore on Evidence, Vol. VIII, § 2336, McNaughton Rev. 1961, at 648-649, citing from Sexton v. Sexton, 129 Iowa 487, 105 N.W. 314 (1905); Com. v. Everson, 123 Ky. 330, 96 S.W. 460 (1906). See also: State v. Thorne, 43 Wash.2d 47, 260 P.2d 331 (1953).
In 63 A.L.R. 107 (1929) it is stated:
"As, under the common-law rule and the statutory enactments thereof, the prohibition is directed to the testimony of husband or wife regarding a confidential communication from one spouse to the other, and not to the testimony of a third person regarding such a communication, there is no reason for excluding the testimony of such third person, and the rule is well settled that a third person who overhears a communication between husband and wife, whether with or without their knowledge, and whether surreptitiously or openly, may testify regarding what he thus learns, although the communication may be, as between the husband and wife, one of a confidential character." (63 A.L.R. 108 and 109)
Appellant further contends that the denial by the trial court of his motion to strike the testimony of Joyce Walker relative to the intercepted telephone conversation, including the identification of the voice, violated appellant's due process rights under the Constitutions of the United States of America and the State of Florida. We find that contention, too, to be without merit.
Finally, appellant urges that admission of witness Walker's testimony is prohibited by Chapter 934, Florida Statutes, F.S.A.
There is no question but that Joyce Walker was acting without the consent, knowledge or acquiescence of either party to the communication when she allegedly *197 overheard the telephone conversation complained of. By her own testimony she was simply "being nosey" and was "eavesdropping."
Florida Statute 934.02, F.S.A. defines "oral communication" to mean any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. The word "intercept" is defined to mean the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device. "Electronic, mechanical, or other device" is defined to mean any device or apparatus which can be used to intercept a wire or oral communication other than: "any telephone * * * instrument * * * furnished to the subscriber or user * * * being used by the subscriber or user in the ordinary course of its business * * *." (and other exceptions not here material)
Florida Statute 934.03, F.S.A. provides in material part as follows:
"(1) Except as otherwise specifically provided in this chapter, any person who:
"(a) Willfully intercepts * * * any wire or oral communication;
* * * * * *
"shall be guilty of a felony of the third degree, * * *".
Florida Statute 934.01, F.S.A., entitled "Legislative Findings" contains the following recitations:
"On the basis of its own investigations and of published studies, the legislature makes the following findings:
* * * * * *
"(2) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of intrastate commerce, it is necessary for the legislature to define the circumstances and conditions under which the interception of wire and oral communications may be authorized and to prohibit any unauthorized interception of such communications and the use of the contents thereof in evidence in courts and administrative proceedings.
* * * * * *
"(4) To safeguard the privacy of innocent persons, the interception of wire or oral communications when none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of crime with assurance that the interception is justified and that the information obtained thereby will not be misused." (Emphasis added)
The fundamental basis of American criminal jurisprudence rests upon a presumption of innocence which abides with an accused until proof is properly and legally adduced demonstrating guilt beyond and to the exclusion of a reasonable doubt. It is apparent therefore that Subsection (4) of the legislative findings above quoted applies to the privacy of all citizens, including those accused of crimes.
The historical note following 934.01 F.S.A. provides, in material part, as follows:
"* * * It has long been recognized by law enforcement officers that one of the key instruments utilized by organized crime in the conducting of its business is the telephone. The wire tapping statute will now permit state, county and municipal law enforcement officers to conduct an electronic surveillance under certain conditions, after following proper procedures, as outlined in the act, and after obtaining court permission. It further provides that any evidence lawfully obtained *198 can be used in evidence in prosecution of any case made. With one exception the state law follows closely the Federal act. The Florida act however, does not contain the provision for an `emergency' wiretap as contained in the Federal act. It must be noted that this act does not permit indiscriminate wire tapping under any and all conditions but as a matter of fact prohibits the same and calls for civil and criminal damages for the illegal possession of wire tapping or electronic surveillance equipment or the unlawful placing of a wiretap without court authority or the conducting of an electronic surveillance without court authority. * * *" (Emphasis added)
Harkening back now to the definition of "electronic, mechanical, or other device" as used in the statute; it has been recently held in United States v. Harpel, 10th Cir., 493 F.2d 346, opinion filed March 12, 1974, construing the federal statute which is virtually identical to the pertinent portion of Chapter 934 Florida Statutes, F.S.A., that "as a matter of law [sic] that a telephone extension used without authorization or consent to surreptitiously record a private telephone conversation is not used in the ordinary course of business."
It is apparent therefore that witness Walker "willfully intercepted" a "wire or oral communication" contrary to the provisions of Chapter 934, Florida Statutes, F.S.A., and that she is therefore guilty of a felony of the third degree. Indeed, the writer of appellee's brief in the case sub judice appears to candidly concede the illegality of the eavesdropping in that he states in the brief:
"Under the given facts in the present case, the state has recourse in prosecuting for wrongfully listening in on anyone [sic] private telephone conversation and Appellant can civilly sue Joyce Walker for said eavesdropping, * * *"
If we properly interpret appellee's statement as above quoted, then we are in complete agreement as to the unlawfulness of the nosey eavesdropping. However, we are unable to follow appellee's further urging that notwithstanding such illegality the contents of the conversation heard as a result of such unlawful eavesdropping is admissible into evidence.
Chapter 934, Florida Statutes, F.S.A., not once but twice, prohibits the admission of the contents of such communication into evidence. Florida Statute 934.06, F.S.A., provides as follows:
"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter."
Florida Statute 934.09(8), F.S.A. provides in material part as follows:
"The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order and accompanying application under which the interception was authorized or approved. * * *"
There is no contention in the case sub judice that any court entered any order accompanying any application under which the subject interception took place.
Applying pure Aristotelian syllogistic logic to the premises above recited, all of which appear in the statute itself, we can arrive at no conclusion but that the contents of the alleged telephone conversation which resulted from admitted eavesdropping by use of an extension receiver *199 without the knowledge of either of the parties to the conversation, and absent authority from the subscriber to the telephone service, was not admissible in evidence.
As above stated, the testimony relative to the intercepted telephone conversation was certainly prejudicial, which leads us to the inescapable conclusion that we must reverse and remand for a new trial.
Since there is a dearth of cases construing the Florida Security of Communications Act, Chapter 934, Florida Statutes, F.S.A., we feel justified in saying, (albeit perhaps as pure obiter dictum, but with the hope of deterring further violations) that in our opinion all unauthorized eavesdropping by use of extension telephone instruments (except where specifically authorized by the act) by persons other than the telephone subscribers, in the absence of knowledge and consent of at least one of the parties to the conversation, is unlawful, criminal in nature and punishable as a third degree felony. Further, we do not question the legislative wisdom in the passing of the act. It may well have been that in the less complicated era of days gone by party-line eavesdropping furnished an acceptable method of entertainment for bored housewives and others lacking in sufficient occupations or avocations of their own. However, those days are gone! We now have radio and television. Whether or not the right of privacy has always existed in one's telephone conversations we need not now decide. It is perfectly obvious though, and we have here so held, that such right does now exist by virtue of statute. The legislature has put teeth in the act: Violation constitutes a felony, a major crime. Those given to the time-honored pastime of eavesdropping should beware!
Our holding here is not without precedent. In United States v. Sugden, C.A. 9, 1955, 226 F.2d 281, affirmed 351 U.S. 916, 76 S.Ct. 705, 100 L.Ed. 1449, a Federal Communications engineer had, with the use of a monitering device, located the defendant's shortwave radio transmitter and had listened to defendant's instructions relative to the hiding of Mexican nationals who had illegally entered the United States to work as agriculture labor. There the trial court granted the defendant's motion to suppress the evidence, on the theory that the evidence had been obtained in violation of the federal statute which made it a crime to "intercept" and divulge the contents of any communication without the authorization of the sender. The Court of Appeals reversed, stating as its reasoning that the broadcasts which had been intercepted by monitering were during a period which preceded the effective date of the defendant's broadcast license. However the court went on to hold that a government agent could not make use of the fruit of his monitoring if he found that the station was legally on the air and the person using the station legally authorized to operate it, since the agent's authority to listen was limited to the purpose of enforcing the communications act. The court also held that in the absence of congressional authority, evidence obtained by listening to a non-public radio broadcast by private individuals, at least at a point away from the sender and receiver and without the consent of either, must be excluded from evidence except in connection with necessary policing for violation of the act.
In People v. Morgan, 197 Cal. App.2d 90, 16 Cal. Rptr. 838 (1961), cert. den. 370 U.S. 965, 82 S.Ct. 1606, 8 L.Ed.2d 830, a defendant's conviction was affirmed notwithstanding the contention that the conduct of the officers who testified at the trial constituted illegal wiretapping under the Federal Communications Act. There the police had monitered a conversation between the defendant and his sister while the defendant was confined in jail and the sister had visited him, talking with him over a telephone system that was entirely contained in the jail and was not connected to ordinary telephone lines. There, however, it was merely held that the federal statute did not apply to a telephone system enclosed entirely within the walls of *200 a jail operated by a local governmental agency and not connected in any way to any public utility system. It does not appear that any state statute was there involved.
This court, in Markham v. Markham, Fla.App. (1st) 1972, 265 So.2d 59, considered a case wherein the husband, in a divorce action, had been permitted to introduce into evidence recordings of conversations between his wife and unidentified third persons, which recordings were made by the husband who was a recording engineer, by the attachment of a tape recorder to two telephone lines leading into the marital home which was owned by the parties as tenants by the entireties. There this court said:
"Although the parties devote considerable time to the Federal Omnibus Crime Bill of 1968, we are of the view that it is unnecessary to apply same to the instant cause. As stated in Katz v. United States [Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, 581 (1967), citing Tehan v. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453, 460]:
`... But the protection of a person's general right to privacy  his right to be let alone by other people  is, like the protection of his property and of his very life, left largely to the law of the individual States.'
* * * * * *
"In Commonwealth v. McCoy [Commonwealth v. McCoy, 442 Pa. 234, 275 A.2d 28 (1971)], the court, in sustaining the suppression of the contents of an intercepted telephone conversation, stated:
`... Hence the Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping.'
[265 So.2d at page 61]
* * * * * *
"The statutory and constitutional law of the State of Florida precludes the admissibility into evidence of a recording of a telephone conversation, if neither party thereto consents, and in the absence of authorization for such recording by a court of competent jurisdiction. The instant recording is not admissible in evidence." [265 So.2d at page 62]
Upon certification to the Supreme Court of Florida in Markham v. Markham, Sup. Ct.Fla. 1973, 272 So.2d 813, that court quoted at length from our opinion and thereupon stated:
"The District Court has correctly answered the question presented and its decision is adopted as the decision of this Court. * * *"
The defendant below, appellant here, is entitled to a new trial.
Reversed.
SPECTOR, Acting C.J., and McCORD, J., concur.

ON PETITION FOR REHEARING DENIED
BOYER, Judge.
The State has filed a Petition for Rehearing, raising certain points which we feel deserve clarification.
First, in our opinion filed herein we did not weigh the crime of murder for which the appellant was convicted against the crime of unauthorized eavesdropping as prohibited by Chapter 934 Florida Statutes and thereupon decide that the latter was the more heinous. Such is not the proper way to adjudicate cases. Were such the rule, no case would ever be reversed because the trial court wrongfully admitted evidence in violation of the "dead man statute" or in violation of the hearsay rule: Certainly it is not a crime for interested witnesses to seek to testify as to communications *201 or transactions with a deceased person nor is it a crime for a witness to seek to testify as to "hearsay". Nevertheless, unless such offered testimony falls within one of the recognized exceptions, such is not admissible in evidence during a trial and if the trial court, over timely objection, admits such and if it is relevant, material and prejudicial then a conviction based thereon will, upon timely appeal, be reversed. In short, in our above opinion we passed upon admissibility of evidence and not upon comparability of crimes. The two crimes referred to in our opinion, murder for which the appellant was convicted and unlawful eavesdropping admitted by the witness, were not "weighed on the scales of justice."
The State urges that the constitutional right of privacy only prohibits invasion by governmental action and not private citizens, citing Barnes v. United States, 373 F.2d 517 (CA 5th, 1967) and Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). We find nothing in those cases contrary to our holding above. It will be noted however that our decision in the case sub judice does not rest upon constitutional grounds, but is based squarely upon the clear language of Chapter 934 Florida Statutes.
The State quotes at length from Bateh v. State, Fla.App. 1st 1968, 208 So.2d 846, wherein this Court held that information obtained by a motel telephone operator who overheard a telephone call to defendant's motel room while said operator was working at the switchboard did not render the information so constitutionally infirm as to preclude the conversation from being admitted into evidence. We have not here receded from our holding in the Bateh case. As above stated, we do not rest our decision sub judice on the constitution, but rather upon the statute. Further, as specifically set forth in our above opinion, the statute clearly excepts from its prohibitions intercepted communications by "any telephone * * * instrument * * * furnished to the subscriber or user * * * being used by the subscriber or user in the ordinary course of its business * * *." Such was also the holding in United States v. Harpel, 10th Cir., 493 F.2d 346, cited in our opinion above.
The State further contends that we erred in holding that evidence illegally obtained contrary to the provisions of Chapter 934 Florida Statutes is not admissible in evidence. In that regard, we point out that it was not necessary for us to so hold. The legislature made that determination. (F.S. 934.06; F.S. 934.09(8)) Further, the Supreme Court of Florida has already so interpreted Chapter 934 Florida Statutes. (Markham v. Markham, Sup.Ct.Fla. 1973, 272 So.2d 813)
Finally, the State urges, on some basis not quite clear to us, that although the Markham case, supra, admittedly construes Chapter 934 Florida Statutes to prohibit the admission into evidence of information unlawfully obtained in violation of the statute in a civil case, such prohibition does not apply to a criminal case. We can find no such exception in the statute, nor do we know of any such dichotomy in the jurisprudence of the State of Florida or, for that matter, in the United States of America.
With the foregoing clarifications, we adhere to our initial opinion, and the Petition for Rehearing is denied.
SPECTOR, Acting C.J., concurs.
McCORD, J., specially concurs.
McCORD, Judge (concurring specially).
I fully agree with the opinion of Judge Boyer on petition for rehearing denied. Were we the legislature, I believe we would be impressed with the desirability of amending the statute in question, but it is not the function of this court to make law. That is the prerogative of the legislature and ours is to interpret and construe the legislative enactments. We cannot construe *202 an unambiguous statute to have a meaning other than the plain, clear wording contained therein. In this instance, the legislature has not limited the definition of the word "person" to law enforcement personnel or employees or to agents of the state. It has specifically included "any individual" in the definition of that term. We, therefore, cannot give it another meaning by judicial fiat.