585 P.2d 900

STATE of Arizona, Appellant,

v.

Edward DWYER, Appellee.

No. 1 CA–CR 2734.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 17, 1978.

Rehearing Denied Oct. 18, 1978.

**292**

Charles F. Hyder, Maricopa County Atty. by George B. Mount, Deputy County Atty., Phoenix, for appellant.

Hoffman, Anderson & Brown, P. C. by David S. Hoffman, Tucson, for appellee.

## OPINION

DONOFRIO, Judge.

The State appeals the granting of appellee Edward Dwyer's motion to suppress conversations between him and Mrs. Sandy Austin overheard by telephone operators in Bisbee, Arizona and all evidence derived therefrom. We affirm the trial court's granting of the motion to suppress.

On the evening of May 6, 1976 appellee called the operator in Bisbee, Arizona to place an emergency phone call. The operator he reached was Ms. Mary Ida Silva. Appellee gave Ms. Silva the number he wanted to reach, told her it was an emergency call and asked her to please interrupt. Ms. Silva dialed the number appellee wished to reach and discovered that it was busy. She then went on what is called a verifying trunk line and heard Mrs. Sandy Austin talking to another woman. Ms. Silva was acquainted with Mrs. Austin and identified her by her voice immediately upon breaking in. She interrupted and told Mrs. Austin that she had an emergency call. Mrs. Austin said she would hang up in a minute. Ms. Silva left the verifying trunk line connected to giver her light supervision which would enable her to determine when the call was completed without having to listen to the conversation. As soon as the light went out she dialed Mrs. Austin's number to connect her with Mr. Dwyer but it was busy. About that time Mrs. Wilma Atkinson, another operator told her that she had Mrs. Austin on another line. Ms. Silva therefore connected Mr. Dwyer to Mrs. Austin on the other line. Pursuant to normal telephone company procedures she listened on the connection briefly to determine that it had been properly connected and to determine that it was actually an emergency call. Ms. Silva then cut off and began picking up the rest of her calls.

After the connection was made between Mrs. Austin and appellee Mrs. Atkinson was told by one of the other operators to "Go into a Bisbee light." She plugged in and heard the telephone conversation between appellee and Mrs. Austin. She listened for approximately 15 minutes. Several other operators were also listening in on the telephone conversation between appellee and Mrs. Austin. On the basis of what the operators overheard they placed an anonymous phone call to the Scottsdale Police Department warning them that Mrs. Austin's husband, Jesse Austin, who was going to be released from the State Hospital, was in danger. The police made no follow-up on this call.

On May 7, 1976, one day after the conversations were overheard, Jesse Austin was released from the State Hospital. On the morning of May 8, 1976 Jesse Austin was found dead, his body bearing approximately 28 stab wounds. On May 9, 1976 one of the telephone operators related to her husband, Douglas Knipp, who was at the time a lieutenant in the Cochise County Sheriff's Department, the nature of the conversations which had been overheard by several of the operators on May 6. The following

day Lt. Knipp called the Scottsdale Police Department with the information he had acquired from his wife. Owing largely to information developed from the contents of these conversations the police arrested Mrs. Austin, appellee and Anthony Ridings. After their arrests the police were able to obtain incriminating statements from both Mr. Ridings and Mrs. Austin. These statements also implicated appellee. On September 30, 1976 appellee was named in a two-count indictment charging him with first degree murder and conspiracy to commit murder. In their opening brief the State forthrightly states:

> "Aside from corroborating circumstantial evidence, the major portions of the State's case are the conversations overheard by the Bisbee operators, the statement made by Sandra Austin, and the statement of Anthony Ridings."

After conducting an evidentiary hearing and considering the arguments and citations supplied by the parties the court suppressed the phone conversations and the statements of Sandra Austin and Anthony Ridings. The court ruled that the telephone operators had, with the exception of Ms. Silva's initial brief verification of the connection, illegally intercepted the telephone conversation between Mrs. Austin and appellee. She therefore imposed the exclusionary rule provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S. Code §§ 2510–2520.

The statutory exclusionary rule provision of the act is as follows:

> "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.

The Senate Report on this section, see 1968 United States Code Congressional and Administrative News, 90th Congress, 2nd Session at 2112, 2184–2185, states that this section must be read in conjunction with the provisions of 18 U.S.C. § 2518(10)(a):

> (10)(a) "Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
> (i) the communication was unlawfully intercepted; . . . "

The unlawful interception of wire or oral communications is prescribed in 18 U.S.C. § 2511(1)(a):

> "(1) Except as otherwise specifically provided in this chapter any person who—
> (a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication; * * * shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

Several of the terms used in 18 U.S.C. § 2511(1)(a) are defined in 18 U.S.C. § 2510. "Person" is defined in 18 U.S.C. § 2510(6) to mean "any employee, or agent of the United States or any State or political subdivision thereof, of any individual, partnership, association, joint stock company, trust, or corporation." "Wire communication" means:

> "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications." 18 U.S.C. § 2510(1).

"Intercept" is defined to mean "Aural acquisition of the contents of any wire or oral communication through the use of any elec-

tronic, mechanical, or other device." The statute also defines "electronic, mechanical or other device" to mean:

"any device or apparatus which can be used to intercept a wire or oral communication other than—(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a).

■ The only lawful intercepts allowed by the statutes are those obtained pursuant to an application to a federal judge by the Attorney General or his specially designated Assistant Attorney General or, at the state level, pursuant to an application by the principal prosecuting attorney of a state or a political subdivision thereof to a state court judge under a state statute authorizing such application. 18 U.S.C. § 2516(1) and (2). These requirements are strictly enforced. *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). There are elaborate requirements for the form and nature of the application set forth in 18 U.S.C. § 2518. There is also a limited authorization for intercepts by phone company personnel:

"(2)(a) It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided,* That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks." (Emphasis theirs) 18 U.S.C. § 2511(2)(a).

The cases arising under this exception primarily involve internal phone company investigations of the users of "blue boxes" designed to enable callers to make long distance calls without paying for them. See *United States v. Auler,* 539 F.2d 642 (7th Cir. 1976), [cert. denied 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555]; *United States v. Goldstein,* 532 F.2d 1305 (9th Cir. 1976), [cert. denied 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327]; *United States v. Clegg,* 509 F.2d 605 (5th Cir. 1975).

■ It is readily apparent that the Bisbee telephone operators were persons within the meaning of the statute. They also intercepted within the meaning of the statute because they aurally acquired the contents of the telephone conversation between Mrs. Austin and appellee through the use of an electronic device. Although telephone equipment or any component thereof is excepted from the meaning of "electronic, mechanical or other device" in the statute it is so excepted only for those telephone facilities being used by a communications common carrier in the ordinary course of its business. Ms. Silva's monitoring of the telephone conversation for a short time in assurance that an emergency call was actually being made was a legitimate use of a telephone facility in the ordinary course of the telephone company's business. See also 18 U.S.C. § 2511(2)(a), supra. However, the actions of the operators in listening for a full 15 minutes to the conversation between appellee and Mrs. Austin for, as appellant puts it, "No purpose at all, other than to fill a bored telephone operator's day" was not in the ordinary course of the telephone company's business.

The trial court found that these interceptions were illegal within the meaning of the federal statute and we agree. The Arizona Supreme Court has held that the inadvertent or accidental overhearing of a telephone conversation by an operator is not a willful interception as proscribed by 18 U.S.C. § 2511. *State ex rel. Flournoy v.*

*Wren,* 108 Ariz. 356, 498 P.2d 444 (1972). The interception by these telephone operators was, however, no accidental or inadvertent interception. It was a willful interception within the meaning of 18 U.S.C. § 2511(1)(a).

The next question is whether, granting the illegality of the interception, the exclusionary rule set forth in 18 U.S.C. § 2515 must be followed in this case. In the recent case of *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977) the Supreme Court of the United States reiterated its previous holding that suppression is required under the statute only for a " 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' ". 429 U.S. at 433–4, 97 S.Ct. at 671, 50 L.Ed.2d at 671, quoting *United States v. Giordano,* supra. It also reiterated its previous holding in *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), that the violation of a statutory requirement renders an interception unlawful under 18 U.S.C. § 2518(10)(a)(i) only if the requirement violated plays a "substantive role" in the regulatory system setout by Title III. In applying this test to the facts of this case it becomes obvious that what is involved here is not a mere technical statutory violation of the regulatory scheme of Title III. What we have here is an unlawful interception of a duration of 15 minutes by several telephone operators without the benefit of a proper application or any of the other safeguards set forth in Title III to protect the privacy of wire communications. We must hold therefore that the court below properly applied the exclusionary rule of 18 U.S.C. § 2515 in this case. Our Supreme Court has said that "the contents of a message may not be received in evidence if the message was intercepted in violation of the statute." [18 U.S.C.Annot. §§ 2511, 2515], *State v. Ford,* 108 Ariz. 404, 499 P.2d 699 (1972) cert. denied 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1972). This case presents an interception obtained in violation of 18 U.S.C. § 2511. Therefore the granting of the motion to suppress by the court below must be affirmed.

Affirmed.

SCHROEDER, P. J., Department C, concurs.

WREN, Judge, specially concurring.

I have searched in vain for a legal premise upon which to dissent from this bizarre result. The privacy of the phone has been infringed by an uninvited ear and a suspected murderer goes free; and all without the slightest hint of any police misconduct. The exclusion required by this invidious statute offends every fiber of my being and I therefore join in the opinion simply because I have no other course. Never have I felt more strongly the need to right a wrong or more strongly the lack of tools to do it with.

Notwithstanding the obvious guilt of the appellee-defendant to the crime of murder this Court has struck down evidence that plainly makes it impossible to ever convict him. Admittedly, the terminology of 18 U.S.C.A. § 2515 compelled the suppression order, but the statute can in no way withstand an assault from the direction of common sense. This case brings to public gaze a spectacle of the complete frustration of justice-suppression of truth in the search for truth. Only a system with limitless patience with irrationality could tolerate the fact that where there has been one wrong, the defendant's, he will be punished; but where there have been two wrongs, the defendant's and another's, the defendant will go free.

Admittedly, eavesdropping is not ranked as one of the most learned or respected of professions. In fact it is the greatest of all invasions of privacy. It places a government agent in the bedroom, in the business conference, in the social hour, in the lawyer's office and everywhere and anywhere a "bug" can be placed. The law must obviously be offended by violations of statutes

designed to protect one's privacy, but I find the proposition incredible that had the switchboard operators in this case made an "inadvertent" interception, such as in *Flournoy v. Wren,* where the motel operator was away from the switchboard filing papers when he answered a room call and could not immediately disconnect himself from the conversation; or as in *Roberts v. State,* Alaska, 453 P.2d 898 (1969), [Cert. denied 396 U.S. 1022, 90 S.Ct. 594, 24 L.Ed.2d 515 (1970), Reh. denied 397 U.S. 1059, 90 S.Ct. 1368, 25 L.Ed.2d 681 (1970)], where a housewife listened for a full ten minutes to a conversation over a party line which had been unknowingly connected to her private line, then the incriminating conversation would have been admissible. Moreover the eavesdropping here was not done for the purpose of gathering evidence for a criminal prosecution and, to that extent it also was completely inadvertent.

I find it even more incredible that Ms. Silva could monitor the telephone conversation for a short time to ascertain that an emergency call was actually being made, and that if the incriminating statements had been made during the monitoring, she could have *continued* to listen and the State could have used the entire conversation as evidence.

I agree that the constitutional right of privacy should not be diminished by the fact that the person involved also committed a crime, but defendant's privacy here had already been invaded prior to the ruling on the motion to suppress. Full disclosure of the murder plot had previously been made by the eavesdropping operators to the grand jury, the police investigators, and to the court. Was anything salvaged or retained by thereafter standing law enforcement on its head by the exclusion of competent evidence that he was guilty of murder? The fact that a defendant's rights are violated should not have a bearing on whether he committed a crime. Both matters should receive a full airing in the proper forum. No one was punished by throwing out the evidence and dropping the prosecution here except the public and justice. To me this case graphically illustrates what has become a cliché—"We use a shotgun to kill a fly."

The "right of privacy", like a chameleon, has a different color for every turning. Why cannot we examine the circumstances of its application in each case to determine whether the evidence should be suppressed? Such a procedure would produce no "Frankenstein Catalog of Horrors". There is nothing magic about the word "constitutional". Violations of constitutional rights, like any others, cover a spectrum from innocently trivial to deliberately terrible, and it is unreasonable to fail to recognize the difference. As Chief Justice Burger reasoned in his dissent in *Bivens v. The Six Unknown F.B.I. Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), when he criticized the exclusionary rule of the Fourth Amendment:

> "Freeing either a tiger or a mouse in a schoolroom is an illegal act, but no rational person would suggest that these two acts should be punished in the same way." 403 U.S. at 419, 91 S.Ct. at 2016, 29 L.Ed.2d at 640.

The disparity between the error committed by the telephone operators and the windfall accorded the defendant by the exclusion is too obvious to merit comment. Moreover, suppression has done nothing to further the right of privacy. If that is its purpose then I submit that imposing upon the telephone operators the indirect sanction of exclusion of criminal evidence is nothing less than sophisticated nonsense. It in no way dissuades the private citizen from eavesdropping. To say that it does is to engage in not only fantasies but absurdities; especially when, as here, obtaining criminal evidence was not the purpose of eavesdropping in the first place. Not even in the complex and turbulent history of the exclusionary rule under the Fourth Amendment and *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has any court ever applied it to exclude evidence obtained by a private citizen. The stated reason for application of the exclusionary rule has always been to deter the *police*

from using improper methods to obtain evidence. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), 79 C.J.S. Search and Seizure § 5c p. 783. In fact the great anomaly here is that the evidence would clearly be admissible under the Fourth Amendment, since the eavesdropping was in no way the product of government or police activity.

Any assertion that the exclusionary rule provisions are not intended to deter interceptions by private citizens, but are designed solely to prevent disclosure of the communication itself is to ignore the fact that § 2515 also excludes all "fruits" of improper eavesdropping. As the trial judge in this case pointed out, *full* disclosure of the telephone conversation had to be made to her since the defendant's motion to suppress was also directed to statements of other persons as poisoned fruit of the intercept. As she correctly noted, it was impossible for her to decide which statements were fruit and which were not without hearing the actual words which were spoken.

Moreover, the Senate Report accompanying the Wire Interception and Interception of Oral Communications Act stated as the purpose of the rule: "[I]t should serve to guarantee that the standards of the new chapter will sharply curtail the unlawful interception of wire and oral communications."[1] In other words, the object is to deny to the *perpetrator* the fruits of his unlawful actions in both civil and criminal proceedings.

In spite of the plain language of the Act, it seems clear to me beyond cavil that Congress could not have intended the absurd result reached here. I submit that private rights will not atrophy by allowing such intercepted evidence to be introduced in a criminal court of law. Suppression in instances of non-police activity should be reserved for the civil courts. The remedy for unlawful intrusion by the private invader should be by tort action or criminal charges.[2] It is a strange fruit indeed of an illegal intercept of a telephone call by a private citizen that proscribes evidence of murder. Ironically, it is to be noted that the Congressional Findings footnoted to Title 18, U.S.C.A. §§ 2510–2520, also comment on its purpose: "To safeguard the privacy of *innocent* persons . . . ." (Emphasis supplied).

I concede that safeguards are needed. Technological advances have produced remarkably sophisticated electronic devices of which the "cocktail olive" and "cufflink microphone" are illustrative. Progress is also being made toward utilizing a laser beam to pick up conversations within a room by focusing upon the glass of a window.

The public telephone plays a vital role in private communications, and surely the person placing the call is entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world. Today, however, Arizona must release a man charged with murder; not because it has deprived him of his constitutional right of privacy, but because in its haste to give force to distasteful eavesdropping Congress has adopted a bad statute.

I feel fully justified in saying, admittedly as pure obitur dictum, that I question the legislative wisdom in the passage of this Act. As stated by Judge McCord in his special concurrence in *Horn v. State,* 298 So.2d 194, 201 (Fla.App.1974), which involved an eavesdropping situation by a private citizen on an extension line under an identical Florida statute and a charge of murder: "I believe we would be impressed with the desirability of amending the statute in question . . . ."

To Judge McCord's comment, I say, "Amen."

---

1. S.Rep. No. 1097, 9th Cong.2d Sess. 96 (1968), U.S.Code Cong. & Admin.News 1968, p. 2185 to Title III–Chp. 119.

2. Civil and criminal sanctions are imposed by 18 U.S.C.A. § 2511 and § 2520. It is noteworthy also, to point out here that "suppression of evidence" is noticeably absent from the wiretapping and eavesdropping legislation adopted in Arizona. Art. 15, Laws 1978, Ch. 126, Secs. 13–1051–13–1059 and in the Revised Criminal Code, effective October 1, 1978.