[S.F. No. 24757. Mar. 18, 1985.]

RICHARD M. RIBAS, Plaintiff and Appellant, v.
JOAN CLARK, Defendant and Respondent.

COUNSEL

John J. Hartford for Plaintiff and Appellant.

Gary C. Smith, Smith & Carlquist and Jeffrey J. Sloane for Defendant and Respondent.

OPINION

**MOSK, J.**—This is an appeal from a judgment of dismissal entered after the court sustained a demurrer to an amended complaint without leave to amend. The facts alleged in the complaint are as follows:

Plaintiff Ribas and his wife began divorce proceedings that ultimately resulted in a court-approved property settlement agreement. The wife was not represented by counsel. After the final judgment of dissolution, the wife consulted an attorney about the tax consequences of the settlement. When informed that the agreement had allegedly adverse implications, she advised plaintiff she had retained the attorney. Plaintiff immediately telephoned the lawyer and a heated exchange ensued.

About an hour later, the wife visited the place of business of defendant Clark and requested to use the telephone to call her husband. She also asked defendant to listen on an extension telephone, and defendant obliged. During this conversation, plaintiff related to his wife—at her prompting—the details of his discussion with her lawyer.

The wife filed an action to set aside the dissolution, alleging that plaintiff procured it by fraud. During an arbitration hearing, defendant testified to her recollection of the conversation on which she had eavesdropped. In particular, she stated that she heard plaintiff concede he had prevented his wife from obtaining counsel during the dissolution proceedings. Although the arbitrator ruled in plaintiff's favor, plaintiff subsequently filed this action against defendant Clark seeking damages for violations of criminal statutes prohibiting various forms of eavesdropping (Pen. Code, §§ 631, subd. (a), and 637), as well as for invasion of privacy, intentional infliction of emotional distress, and outrage. A demurrer to the amended complaint was sustained without leave to amend, and this appeal followed.[1]

---

[1]Defendant acknowledges that plaintiff's complaint is adequate if it sets forth essential facts with reasonable precision and sufficient particularity to acquaint her with the nature, source and extent of his cause of action. (*Gressley* v. *Williams* (1961) 193 Cal.App.2d 636, 643-644 [14 Cal.Rptr. 496].) For the reasons to be given, we conclude that the complaint, with a few revisions, will pass muster.

## I.

■ Plaintiff's primary contention is that defendant's act of monitoring his conversation with his wife constituted a breach of the Invasion of Privacy Act (Pen. Code, §§ 630-637.2, hereafter Privacy Act), vesting in him a civil cause of action for damages. Defendant replies that the Privacy Act has never been—and should not now be—construed to prohibit eavesdropping by means of an extension telephone.

The dispute centers on Penal Code section 631, subdivision (a), which penalizes various forms of secret monitoring of conversations. The statute makes punishable "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, . . . or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . ., or is being sent from, or received at any place within this state . . . ."[2]

In enacting this statute, the Legislature declared in broad terms its intent "to protect the right of privacy of the people of this state" from what it perceived as "a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act. (See, e.g., *Warden* v. *Kahn* (1979) 99 Cal.App.3d 805, 810 [160 Cal.Rptr. 471].) Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties. (*Rogers* v. *Ulrich* (1975) 52 Cal.App.3d 894, 899 [125 Cal.Rptr. 306].)

Defendant contends that the Privacy Act prohibits only the unauthorized monitoring of communications while they are "in transit," and that "once a phone message reaches its place of destination it is no longer in transit . . . ." This argument, however, ignores the plain language of section 631, subdivision (a), that provides for the punishment of one "who willfully and

---

[2]Plaintiff also contends his complaint sufficiently alleges a violation of Penal Code section 637. This contention is groundless. Section 637 makes punishable "[e]very person not a party to a . . . telephonic communication who willfully discloses the contents of [such message] . . . addressed to another person, without the permission of *such* person. . . ." (Italics added.) Under this statute, disclosure is unlawful unless, as here, it has the approval of the person to whom the communication was addressed. (See *People* v. *Wilson* (1971) 17 Cal.App.3d 598, 603 [94 Cal.Rptr. 923].)

without the consent of all parties . . . reads, or attempts to read, or to learn the contents . . . of [a] . . . communication while the same is *in transit . . ., or is being sent from, or received at* any place within this state . . . ." (Italics added.) It cannot be seriously disputed that defendant is accused of eavesdropping on plaintiff's conversation with his wife while the communication was either "in transit" or was "being sent from" and "received at" a place within this state. Thus, viewing the operative language of the statute alone, we conclude the complaint charges defendant with a prima facie violation of section 631.

Defendant nevertheless argues that section 631 proscribes nothing more than wiretaps, and cites *People* v. *Soles* (1977) 68 Cal.App.3d 418, 420 [136 Cal.Rptr. 328], as authority for this position.[3] In *Soles,* a motel manager furtively listened on the motel switchboard to telephone calls to the defendant's room concerning narcotics transactions. Although the court deemed section 631 inapplicable, its decision rested primarily on the ground that the manager's continuing interest in keeping his premises free of criminal activity precluded tenants from entertaining a reasonable expectation of privacy in their conversations. (*Id.* at p. 421.) In any event, to the extent that *Soles* viewed section 631 as merely encompassing the use of electronic amplifying and recording devices, it is erroneous. Such a construction is inconsistent with the broad wording and purpose of the statute, and would render superfluous the language proscribing attempts "in any unauthorized manner . . . to learn the contents . . . of any . . . communication . . . ."

We have read section 631 as prohibiting far more than illicit wiretapping. (*Tavernetti* v. *Superior Court* (1978) 22 Cal.3d 187, 192-193 [148 Cal.Rptr. 883, 583 P.2d 737].) In *Tavernetti,* we considered the section to proscribe three separate acts: (1) intentional wiretapping, (2) willful attempts to learn the contents of a communication in transit, and (3) attempts to use or publicize information obtained in either manner. (*Id.* at p. 192; see also *People* v. *Suite* (1980) 101 Cal.App.3d 680, 686 [161 Cal.Rptr. 825].) Additionally, the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent. (*People* v. *Wyrick* (1978) 77 Cal.App.3d 903, 909 [144 Cal.Rptr. 38]; *Forest E. Olson, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 188, 191 [133 Cal.Rptr. 573].) While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that

---

[3]Defendant also invokes *Rogers* v. *Ulrich, supra,* 52 Cal.App.3d 894, on this point, but her reliance is misplaced. *Rogers* merely held, correctly, that section 631 does not penalize the secret recording of a conversation by one of the *participants*.

auditor be a person or mechanical device. (*Warden* v. *Kahn, supra,* 99 Cal.App.3d 805, 813-814.)

As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements. (Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1232.) Partly because of this factor, the Privacy Act has been read to require the assent of all parties to a communication before another may listen. (*Id.* at p. 1202.) Thus, the Legislature could reasonably have contemplated that section 631, subdivision (a), would prohibit the type of surreptitious monitoring of private conversations alleged here, and there is no indication that it did not. Indeed, it is probable that the Legislature viewed section 631 as a means of proscribing attempts to circumvent other aspects of the Privacy Act, e.g., by requesting a secretary to secretly transcribe a conversation over an extension, rather than tape recording it in violation of section 632.

Even in jurisdictions with eavesdropping statutes that are narrower than that of California, several courts have at least implied that listening on extension telephones without the consent of all participants is prohibited. Thus, an Arizona court affirmed, under a federal wiretapping statute that has since been amended, the suppression of evidence obtained by telephone operators who eavesdropped on a conversation between the defendant and his wife. (*State* v. *Dwyer* (1978) 120 Ariz. 291 [585 P.2d 900].) In a similar vein, the language of several Florida decisions supports a construction of that state's laws that would ban "all unauthorized eavesdropping by use of extension telephone instruments. . . ." (*Horn* v. *State* (Fla.App. 1974) 298 So.2d 194, 199 [decided before the relevant statute was amended to require the consent of all parties to the conversation]; see also *State* v. *Tsavaris* (Fla. 1981) 394 So.2d 418, 423; *State* v. *Sarmiento* (Fla. 1981) 397 So.2d 643, 645.) Coincidentally, in reviewing the Florida law on the subject, one commentator has observed that the surreptitious monitoring of private communications is an increasing problem in domestic relations cases, not unlike the matter before us. (Greene, *Woods Have Eyes as Walls Have Ears: Intraspousal Wiretapping and Eavesdropping in Domestic Relations Cases* (1982) 56 Fla. Bar J. 643, 644.)

In short, a textual analysis of section 631, the declaration of legislative intent accompanying its enactment, and the various judicial and scholarly authorities addressing the issue leave us no doubt that one of the Privacy Act's objectives was to curb the type of conduct alleged here. Accordingly,

the complaint sufficiently states a cause of action for its violation unless defendant's conduct falls within some exception to the statute.[4]

## II.

Specifically excluded from the ban of section 631, subdivision (a), is the use of any equipment "furnished and used pursuant to the tariffs of" a public utility engaged in the business of providing communications services. (Pen. Code, § 631, subd. (b).) ■■ Defendant claims that because her telephone extension was provided, installed, and serviced by the telephone company, her conduct escapes the Privacy Act's sanctions. For several reasons, the contention is without merit.

First, because the complaint alleges a prima facie violation of section 631, subdivision (a), it is defendant's burden on this demurrer to show on the face of the pleadings that she comes within the exception of subdivision (b) of the statute. She cannot make that showing, however, because her claim raises issues of fact: for example, she has not demonstrated that her extension telephone was furnished by the telephone company. Thus, defendant has not established how, or even whether, her conduct was in compliance with any relevant tariffs. Moreover, because she did not submit copies of the tariffs or ask the trial court to judicially notice them, neither we nor the trial court are able to consider what they may provide. (See Evid. Code, § 453.) Accordingly, defendant could not and did not properly raise this issue on demurrer.

Next, independent research discloses that there indeed was no tariff of the former Pacific Telephone and Telegraph Company placing any restrictions on the use of extension telephones for monitoring conversations at the time of the conduct alleged here. (Comment, *supra,* 57 Cal.L.Rev. at p. 1206; see also *Pacific Telephone and Telegraph Co.* (1965) 64 Cal.P.U.C. 526,

---

[4]Concerns have been expressed that our reading of section 631 could lead to absurd results, e.g., allowing parents to sue their children—and vice-versa—for eavesdropping on an extension line. Such fears are groundless. First, parents presumably would be protected from such lawsuits by the immunity they are afforded when they reasonably and prudently exercise their disciplinary authority. (*Gibson* v. *Gibson* (1971) 3 Cal.3d 914, 921 [92 Cal.Rptr. 288, 479 P.2d 648].) Second, in enacting these types of statutes the Legislature essentially adopts a standard of care to govern the conduct of reasonable adults; this standard does not apply to children because they are traditionally expected to behave only as would their peers of like age, experience and intelligence. (*Cummings* v. *Los Angeles* (1961) 56 Cal.2d 258, 263 [14 Cal.Rptr. 668, 363 P.2d 900].) Thus, for example, a child of seven would not be expected to know the standards of care set forth in the Vehicle Code. (*Ibid.;* see also *Brown* v. *Connolly* (1962) 206 Cal.App.2d 582, 587 [24 Cal.Rptr. 57].)

In any event, to the extent that the broad language and purposes of the Privacy Act may encompass conduct that some people believe should not be proscribed, their remedy *is to* ask the Legislature to draft a statute they find more palatable.

532-533.)[5] Nevertheless, the silence of the tariffs on this point does not permit the use of such telephones for eavesdropping. To the contrary, this same silence means that the use of an extension for surreptitious monitoring cannot be said to be a use "pursuant to" any of the telephone company's tariffs.

Finally, defendant's construction of the statute's tariff exception would run counter to the Legislature's express objective in enacting section 631: it was designed to " 'protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone *or listen* in on the call.' " (Italics added.) (Comment, *supra,* 57 Cal.L.Rev. at p. 1202, fn. 120.) Defendant's view that section 631, subdivision (b), allows third persons to eavesdrop on conversations via extensions would be "a clear contradiction of the intent of section 631(a)." (*Id.* at p. 1206.) Moreover, the tariff exception was obviously designed to allow the use of various types of recording and monitoring equipment—including speakerphones and telephone answering machines—because compliance with the tariffs in such cases will normally *preclude* eavesdropping: the tariffs require the use of warning devices on recorders, and generally stipulate that other types of equipment not be used in a manner allowing unauthorized persons to overhear conversations. (*Id.* at pp. 1205-1206; see also *Pacific Telephone, supra,* 64 Cal.P.U.C. at pp. 535-536.)

In the face of this evidence of the scope of the tariff exception, there is no proof that the Legislature viewed section 631, subdivision (b), as negating its continuing policy that "communications over public utility telephone systems shall be private." (*Pacific Telephone, supra,* 64 Cal.P.U.C. at p. 534; see also Pen. Code, § 630.) In sum, to permit a third person to furtively listen to a conversation on an extension telephone would clearly contravene the objectives of section 631, subdivision (a). Thus, we conclude that the use of extension telephones for eavesdropping on confidential communications does not fall within this exception to its provisions.

### III.

Defendant next relies on the privilege accorded to statements published in judicial proceedings. This contention has merit.

---

[5]We note that the tariffs in force today would squarely proscribe the activity defendant asserts they allow. Rule 30 of the Pacific Bell Company tariffs provides in relevant part: "Any telephone service furnished under the Utility's tariffs and used by a customer, his employee or agent, to overhear or observe any telephone conversation, to which he is not a party, over any part of the exchange and toll network, requires that adequate notice be given to all parties to the telephone conversation that the conversation is being overheard or observed." (Pacific Bell Schedule Cal.P.U.C. No. 36-T, 5th Rev. Sheet 79, eff. July 8, 1984.)

Civil Code section 47 provides in relevant part that: "A privileged publication or broadcast is one made . . . [¶] 2. In any . . . (2) judicial proceeding, or (3) in any other official proceeding authorized by law. . . ." Plaintiff concedes, as he must, that an arbitration hearing falls within the scope of this privilege because of its analogy to a judicial proceeding. (*McMann* v. *Wadler* (1961) 189 Cal.App.2d 124, 129 [11 Cal.Rptr. 37].) ■ Nonetheless, he urges that the "tortious nature and purpose" of defendant's alleged actions takes his cause of action outside the privilege of section 47; as authority for this rather unique proposition he cites *Herzog* v. *"A" Company, Inc.* (1982) 138 Cal.App.3d 656 [188 Cal.Rptr. 155], and *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063].

First, *Herzog* and *Unruh* are distinguishable from the case at bar. Both involved a tortfeasor's infliction of damage *prior* to a judicial proceeding, and in *Unruh* the lack of any possible application of the privilege was unquestioned and therefore was not discussed.

Second, although the statutory privilege accorded to statements made in judicial proceedings appears in the code in the chapter on defamation, it applies to virtually all other causes of action, with the exception of an action for malicious prosecution. (*Pettit* v. *Levy* (1972) 28 Cal.App.3d 484, 489 [104 Cal.Rptr. 650].) Thus, the privilege will defeat claims of invasion of privacy (Rest.2d Torts, § 652F; see *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 782 [180 Cal.Rptr. 657, 640 P.2d 793]) and intentional infliction of emotional distress. (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 640-641 [99 Cal.Rptr. 393].) The privilege therefore poses a clear bar to plaintiff's action insofar as it is based on (1) "outrage"—a variation of the tort of intentional infliction of emotional distress—and on (2) his common law right to privacy, because his alleged injury stems solely from defendant's testimony at the arbitration proceeding. (See *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 390-391 [182 Cal.Rptr. 438]; *Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 125-126 [185 Cal.Rptr. 92].)

■ More difficult is the question whether plaintiff's recovery for the asserted violation of this state's criminal eavesdropping laws should also be thwarted by the section 47 privilege. Penal Code section 637.2 provides that "[a]ny person who has been injured by a violation of" the Privacy Act may bring an action for $3,000 or three times his actual damages, whichever is greater. It appears no case has ever considered the applicability of Civil Code section 47 to statutory causes of action. However, the purpose of the judicial proceedings privilege seems no less relevant to such claims. Underlying the privilege is the vital public policy of affording free access to

the courts and facilitating the crucial functions of the finder of fact. (*Kachig v. Boothe, supra,* 22 Cal.App.3d 626, 641.) "The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." (Prosser, Law of Torts (4th ed. 1971) p. 778.) This policy is equally compelling in the context of common law and statutory claims for invasion of privacy; there is no valid basis for distinguishing between the two. Certainly, nothing indicates that in enacting Penal Code section 637.2 the Legislature intended to immunize causes of action under that statute from the traditional privileges applicable to various forms of oral evidence.

Thus, to the extent plaintiff alleges in his complaint that he suffered actual injury solely as a result of defendant's testimony at the arbitration hearing, his cause of action under Penal Code section 637.2 must fail.

Nevertheless, the same statute authorizes civil awards of $3,000 for each violation of the Privacy Act despite a party's inability to prove actual injury. (*Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 882 [168 Cal.Rptr. 361].) Because the right to such an award accrues at the moment of the violation, it is not barred by the judicial privilege. Here, plaintiff asserts a violation of the Privacy Act that is alleged to have taken place during a conversation with his wife prior to, and not in the context of, any judicial proceeding. Section 637.2 therefore permits him to pursue his statutory remedy of a civil lawsuit for $3,000, even though the judicial privilege bars his recovery for the only actual damage he claims to have suffered. In view of the manifest legislative purpose to accord every citizen's privacy the utmost sanctity, section 637.2 was intended to provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right.

The judgment is reversed with directions to allow plaintiff to amend his complaint in accordance with the views expressed herein.

Bird, C. J., Reynoso, J., and Grodin, J., concurred.

**KAUS, J.,** Concurring and Dissenting.—I concur in the judgment. I agree that the complaint alleges a violation of Penal Code section 631, subdivision (a), since it does not show on its face that the tariff exception of subsection (2) of subdivision (b) is applicable. I do not agree, however, with the majority's discussion indicating that even if nothing in the tariff in effect at that time prohibited eavesdropping by use of an extension phone, subdivision (a) still applied. I fail to see how a tariff's silence concerning a particular use of an extension phone can turn such use into one which is not "pursuant

to the tariff." Moreover, if silence as well as express prohibition violate the tariff, it is hard to divine a rational legislative purpose for the tariff exception.[1]

The leading law review article on the scope of the Invasion of Privacy Act—cited several times by the majority—indicates that the majority errs in reading subdivision (b)(2) as if it did not exist: "At present, the tariffs of the Pacific Telephone and Telegraph Company place no restrictions on the use of ordinary extension telephones. Thus under this exception one party seemingly can permit a third person to listen in on a conversation on an extension, a clear contradiction of the intent of section 631(a)." (Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1205-1206.)[2]

Indeed, even if there were some ambiguity in the application of the tariff exemption in this setting, the majority's interpretation ignores the fact that we are construing a *penal statute*. Although in this case defendant faces only civil damages, under the majority's reading of the statute defendant would have committed a crime even if her conduct violated no tariff.[3]

In short, since the complaint does not specifically allege that the eavesdropping was accomplished by the use of equipment furnished *and* used according to a public utility's tariff, the complaint does state a cause of action for a violation of section 631. If it should turn out, however, that the extension in question was furnished and used in a manner consistent with the applicable tariffs, the action should fail.

Broussard, J., and Lucas, J., concurred.

---

[1]The majority suggests that it was designed to apply to the use of recording and monitoring equipment. I respectfully suggest that this purpose is served by subdivision (e)(2) of section 632.

[2]The fact that today a tariff may prohibit eavesdropping by extension is, of course, immaterial.

[3]I find no support for the majority's suggestion at footnote 4 that there would be no liability as between parents and their children for violations of the Invasion of Privacy Act and even less for the further suggestion that, in any event, the prohibitions of the act do not apply to children at all. Nowhere in this act, which provides for criminal sanctions as well as a civil cause of action for damages, is there any special rule for minors. (See Pen. Code, § 26.)