[L.A. No. 30895. Sept. 22, 1978.]

THOMAS FREDRICK TAVERNETTI et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Dean A. Goetz, under appointment by the Supreme Court, Livingston, Grant, Stone & Kay, Laurence D. Kay, Maureen C. McGowan, Cronin & Cronin and Daniel J. Cronin for Petitioners.

Glen L. Moss, Moss & Murphy, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, D. Michael Ebert and Richard D. Huffman, Deputy District Attorneys, for Real Party in Interest.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Jay M. Bloom, Deputy Attorneys General, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

MOSK, J.—In this petition for writ of prohibition, we must decide whether a telephone company employee's conduct in intercepting private telephone conversations or in subsequently disclosing to law enforcement authorities the contents of such conversations violated either federal or state law concerning wiretapping and eavesdropping.

The following events gave rise to this prosecution: in November 1976 the Escondido police sought a warrant to search certain premises on the basis of an officer's affidavit, the sole source of information for which was the contents of two intercepted private telephone calls. The affiant, Officer Mosemak, declared that he had been contacted by Joseph Maco, a lineman for the Pacific Telephone Company assigned to "trouble shoot" and repair line malfunctions, and informed that Maco, while testing a line for a malfunction, cut in on a conversation and heard the party calling from the telephone unit offer 100,000 "bennies" for sale at $5,000. Some time later, Maco cut in on another conversation and heard the same voice offer to sell "pharmaceutical quality type 'bennies' in the quantity of one million . . . in minimum lots of 100,000 at $5,000 per lot." Maco stated that he cut in on these conversations because, having metered the line electronically, he "was of the opinion that there was a malfunction in the line each of the two times. . . . [and] each time he cut in on the line he listened for a short time and did not monitor the entire conversation."

A warrant was issued and the subsequent search produced a quantity of capsules, seeds, "green vegetable matter," and other evidence. Following a preliminary examination at which this evidence was presented, defendants were charged by information with cultivation of marijuana (Health & Saf. Code, § 11358), possession of marijuana for sale (Health & Saf. Code, § 11359), and possession of controlled substances (Health & Saf. Code, §§ 11350, 11377).

Defendants then moved to set aside the information pursuant to Penal Code section 995 on the ground that all of the evidence adduced at the preliminary examination to establish probable cause was illegally seized and therefore should have been suppressed. They claimed the search warrant should not have been issued because the only evidence presented to support it was obtained in violation of federal law regulating wiretapping (18 U.S.C. §§ 2510-2520) and the California Invasion of Privacy Act (Pen. Code, §§ 630-637.2), both of which statutory schemes contain exclusionary provisions. Their motion was denied by the trial court, and defendants now seek relief from this ruling in the form of a writ of prohibition restraining the respondent court from conducting further proceedings against defendants in this action.

We first consider the interplay between the federal and state provisions which defendants invoke. In *People* v. *Conklin* (1974) 12 Cal.3d 259, 273 [114 Cal.Rptr. 241, 522 P.2d 1049], we concluded that the proscriptions of Penal Code section 631—the state provision upon which defendants rely—are enforceable because the federal act was not intended to occupy the entire field of wire communications and electronic surveillance to the exclusion of state regulation (*id.,* at p. 266), and section 631 does not impair the attainment of federal objectives, but rather aids in fulfilling the purposes of federal law (*id.,* at pp. 270-272). Thus, if we determine that the telephone company employee's conduct violated section 631, activating the exclusionary rule contained therein —as we do—we need not consider whether such conduct was also in violation of the federal provisions asserted. (See also Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1199-1200.)

■ Section 631, subdivision (a), broadly prohibits the interception of wire communications and disclosure of the contents of such intercepted communications. Defendants claim that the conduct of the telephone company employee herein fell within the proscriptions of subdivision (a), thus invoking the exclusionary rule of subdivision (c) and rendering

inadmissible in any judicial or other proceeding evidence concerning the contents of the private telephone conversations overheard. The People counter by contending that the exception set forth in subdivision (b) in favor of public utilities engaged in the business of providing communication services and their employees is applicable, thus protecting the activities of this employee.[1]

It is clear that the telephone company employee whose conduct is challenged committed acts which, unless excepted by subdivision (b), are punishable by fine and imprisonment. It is undisputed, for instance, that twice he intentionally tapped a telephone wire, an act expressly proscribed in subdivision (a). The trial court, however, made certain factual findings that undercut defendants' position. The court, in denying the motion to set aside the information, impliedly found that the employee tapped the telephone wire "for the purpose of construction, maintenance, conduct or operation of the services and facilities" of the telephone company, and was thus exempted by subdivision (b)(1) from

---

[1]Section 631 provides: "(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any such wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison. If such person has previously been convicted of a violation of this section or Section 632 or 636, he is punishable by fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not exceeding one·year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison.

"(b) This section shall not apply (1) to any public utility engaged in·the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited herein are for the purpose of construction, maintenance, conduct or operation of the services and facilities of such public utility, or (2) to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of such a public utility, or (3) to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.

"(c) Except as proof in an action or prosecution for violation of this section, no evidence obtained in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding."

criminal liability therefor. Likewise, defendants' contention that the employee "willfully and without the consent of all parties" attempted to learn the contents of the conversations intercepted—another act proscribed by subdivision (a)—was rebuffed by an implied finding that the employee, once he had intentionally tapped the line in the course of his duties, attempted only to determine whether there was a malfunction in the line and then terminated the interception. Because we conclude the employee's conduct in disclosing the contents of the conversations overheard violated subdivision (a), we need not decide whether the trial court's implied findings of fact should be disturbed.[2]

The People argue, alternatively, that the employee's disclosure of the contents of conversations overheard during the course of his intentional wiretaps was not violative of subdivision (a) either because disclosure of information learned during a legal interception cannot violate section 631, or because the disclosure herein protected the interests of the telephone company and thus came within the exemptive provisions of subdivision (b), as the trial court impliedly found.

We reject the assertion that disclosure of the contents of a private telephone conversation is not barred by subdivision (a) when such contents are obtained by an intentional, albeit legal, wiretap. To accept that concept would contravene the unambiguous language of section 631 and the clearly expressed purpose of the Legislature in enacting the Invasion of Privacy Act. Subdivision (a) of section 631 prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities. When the contents of a private wire communication, e.g., a telephone conversation, are intercepted by one not a party to the communication, disclosure is to be penalized, subject

___

[2]We must observe, however, that the telephone company employee's conduct seems unnecessarily intrusive. Why, for instance, was the party monitored herein not advised that his line would be tapped for purposes of detecting a malfunction? It would seem more reasonable—and well worth any minor burden that might be imposed—to notify telephone subscribers and inform them of the need to monitor their lines. Moreover, it is troubling that the lineman listened to the conversations twice for a length of time sufficient to understand and relate in some detail their contents. Again, the needs of the telephone company would seem to be served with a far lesser intrusion. The lineman should tap into a line, if such conduct is necessary at all absent a subscriber's complaint, only to ascertain that intelligible words are being spoken; once it is so determined, the monitoring should cease immediately. (See Rudick, Big Mother is Listening (June 19, 1978) New West, at p. 27.)

only to exemption under the terms of subdivision (b). That subdivision (b) may apply to exempt the initial interceptive conduct does not affect statutory application to subsequent disclosure, for as the Legislature has recognized, divulging the contents of an intercepted communication is an independent act that further intrudes on the privacy of the parties to the communication, beyond the intrusion occasioned by the initial interception.

To effectuate the legislative purpose expressed in section 630—"The Legislature by this chapter intends to protect the right of privacy of the people of this state"—and reflected in the structure and language of section 631, we hold that disclosure of the contents of a private telephone conversation, intercepted by means of an intentional wiretap, is illegal under section 631, subdivision (a), unless within the carefully limited exemptive provisions of subdivision (b). This is the rule regardless of the original legality of the interception.

We must therefore determine whether the telephone company employee's *disclosure* was "for the purpose of construction, maintenance, conduct or operation of the services and facilities" of the telephone company so as to bring such disclosure within the exemption provided in subdivision (b)(1). The People may not assert an implied finding of fact by the trial court to establish the application of subdivision (b)(1), for the ruling of the court below appears to have been based on the erroneous legal conclusion, urged by the People before this court, that disclosure—for whatever purpose—is not proscribed as long as the initial interception was legal under section 631. Indeed, the ruling below obviously derived from an erroneous application of the section because there is no support in the record for the conclusion that the employee's disclosure was for any of the requisite purposes.

The People offer a bifurcated and strained rationale in contending it is a necessary incident to the duties of telephone company employees to report evidence of crimes intercepted by them in the course of their work. It is first asserted that as the telephone company is a public utility, it is bound to serve the public, and failing to report evidence of a crime would be inconsistent with this purpose. The alternative aspect advanced involves the contention that disclosing evidence of a crime protects the company's rights, even though the criminal activity is not directed against the telephone company. Invoked is a right of the telephone company to insure that its systems are not used to facilitate criminal activity.

In *People* v. *McKinnon* (1972) 7 Cal.3d 899, 914 [103 Cal.Rptr. 897, 500 P.2d 1097], a majority of this court declared that "a common carrier, no less than any other citizen, has the right, indeed the duty, not to knowingly allow its property to be used for criminal purposes." We added that a carrier "is not required to risk the injury to its reputation and business which could well ensue from public knowledge that it permits its facilities to be used by criminals for the purpose of trafficking in narcotics." We do not depart from that general principle.

*McKinnon,* however, is inapposite. The issue there was whether cardboard cartons, improperly described and shipped via air carrier at the rate for "personal effects," were "things readily moved" and thus, pursuant to *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975], subject to search by a suspicious airline employee. In *McKinnon* there was no guiding statute, federal or state, relating to conduct by employees and no criminal sanctions or statutory exclusionary rule for conduct at variance with the statute.

The contentions in the instant case, designed to bring the employee's disclosure within the limited exemption of subdivision (b)(1), fail. His disclosure of the contents of private telephone conversations simply was not for the purpose of protecting the telephone company or promoting its interests, but no doubt derived, rather, from what the employee perceived to be his independent obligation to bring to the attention of law enforcement authorities suspicious conversations of which he had become aware. The People respond to this "example of good citizenry" by claiming that it would be anomalous to hold the employee potentially liable criminally for performing his duty of reporting suspicion of crime. Such a result, it is urged, would be inconsistent with the public policy expressed in *McKinnon.*

There is another fundamental principle involved, emphasized subsequent to *McKinnon,* that the People overlook: the public policy favoring protection of privacy rights. The California Constitution has been amended to include among the inalienable rights of all people the right to pursue and obtain privacy (Cal. Const., art. I, § 1). This forceful expression of the constitutional stature of privacy rights reflects a concern previously evinced by the Legislature in enacting the invasion of privacy provisions of the Penal Code. The Legislature expressly declared its intent "to protect the right of privacy of the people of this state." (Pen. Code, § 630.) The provisions which follow this declaration of intent respond to a perception that the invasion of privacy resulting from

electronic eavesdropping upon private communications "has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (*Id.*) Justice Brennan has warned that we must be alert to prevent "electronic surveillance from becoming the abhorred general warrant which historically had destroyed the cherished expectation of privacy in the home." (*Scott* v. *United States* (1978) 436 U.S. 128, 143 [56 L.Ed.2d 168, 181, 98 S.Ct. 1717] (dis. opn. by Brennan, J.).)[3] Faced with conflicting policies, our Legislature clearly chose to protect the privacy of the people of California when it enacted section 631. We cannot adopt the strained interpretation of subdivision (b)(1) urged by the People in the face of the Legislature's forcefully expressed intent and the constitutional significance in California of the right to privacy. (Cf. *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 245 [118 Cal.Rptr. 166, 529 P.2d 590]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 832 [134 Cal.Rptr. 839].)

For the foregoing reasons, we conclude that a search warrant should not have issued because the evidence presented to secure it was obtained in violation of section 631, subdivision (a), and should therefore have been excluded as required by subdivision (c). Only this result accords with the clear purpose and import of section 631 and its privacy-protecting scheme. Consequently, the seized evidence must be suppressed and the information based on such evidence quashed.

Let a writ of prohibition issue as prayed.

Bird, C. J., Tobriner, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.,** Dissenting.—Since the evidence challenged here was not *obtained* by an unlawful wiretap, suppression is not required.

Subdivision (a) of section 631 of the Penal Code provides that "Any person who . . . intentionally taps . . . any telegraph or telephone wire . . . or who uses, or attempts to use . . . or to communicate . . . any information *so obtained* . . . is punishable by a fine . . . or by imprisonment . . . or by both . . . ." (Italics added.)

---

[3]The decision in *Scott* is not helpful; it involved a wiretap by government agents acting with a court-obtained warrant. The court did note that it tests the agents' "actions not their motives." (*Id.*, at p. 139 [56 L.Ed.2d at p.178].)

Subdivision (b) of section 631 provides exceptions to the coverage of the section. "This section shall not apply (1) to any public utility engaged in the business of providing communications services and facilities, or to the officers, employees or agents thereof, where the acts otherwise prohibited herein are for the purpose of construction, maintenance, conduct or operation of the services and facilities of such public utility . . . ."

Finally, subdivision (c) of section 631 provides that "no evidence *obtained* in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding." (Italics added.)

The word "obtained" in subdivision (c) most reasonably refers to the original acquisition of the information by wiretap. Such meaning is consistent with the use of the words "so obtained" in the phrase "or to communicate . . . any information so obtained" in subdivision (a). The original acquisition of the evidence challenged here was clearly lawful under section 631 because, as the trial court impliedly found, the wiretap was encompassed within the exception stated in subdivision (b) in that it was performed by an employee of a public utility "for the purpose of . . . maintenance . . . or operation of the services . . . of such public utility." Therefore, the challenged evidence was not "obtained in violation of this section."

Even assuming for the sake of argument that section 631 prohibits *disclosure* of information lawfully intercepted, the disclosure here, like the interception, was exempt because it was "for the purpose of construction, maintenance, conduct or operation of the services and facilities of such public utility . . . ." The majority deny this, arguing that the lineman disclosed the conversations to the police, "not for the purpose of protecting the telephone company or promoting its interests," but because he felt required to do so as a good citizen. (*Ante,* p. 194.) However, try as they might, the majority cannot explain away the statement in *McKinnon* that "a common carrier, no less than any other citizen, has the right, indeed the duty, not to knowingly allow its property to be used for criminal purposes." (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 914 [103 Cal.Rptr. 897, 500 P.2d 1097].) *McKinnon* reminds us that corporate entities, no less than individuals, have responsibilities as citizens and that by reporting a crime one may fulfill his responsibilities both as an individual citizen and as a corporate employee. This is clearly such a case.

The majority respond that the duty to report crime is overridden here by the public policy favoring privacy. However, the equally strong public policy favoring confidentiality of attorney-client communications, for example, yields to the attorney's duty to disclose his client's intention to commit a crime and the information necessary to prevent the crime. (ABA Code of Prof. Responsibility, DR 4-101(C)(3).)

Finally, today's majority opinion both impedes effective law enforcement and discourages good citizenship. Now, one who innocently overhears a crime being planned or carried out by telephone cannot lawfully do anything to prevent it. Today, it is a narcotics transaction involving hundreds of thousands of contraband pills; tomorrow, robbery, rape or murder.

The petition for writ of prohibition should be denied.

Richardson, J., concurred.