102 Cal.App.3d 301 (1980)
162 Cal. Rptr. 360
THE PEOPLE, Plaintiff and Respondent,
v.
THOMAS EDWARD SAPPER, Defendant and Appellant.
Docket No. 19438.
Court of Appeals of California, First District, Division Three.
February 20, 1980.
*302 COUNSEL
Marshall W. Krause and Krause, Timan, Baskin, Shell & Grant for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
RHODES, J.[*]
(1) A Trans World Airlines (hereafter TWA) baggage representative, suspicious of a package handed him by appellant for shipment, X-rayed it, opened it, and found marijuana. People v. McKinnon ((1972) 7 Cal.3d 899 [103 Cal. Rptr. 897, 500 P.2d 1097]) mandates that we affirm appellant's resulting felony conviction (possession of marijuana for sale (Health & Saf. Code, § 11359)) on the ground that the search was "private" and not subject to the search and seizure clauses of the state (art. I, § 13) or federal (4th Amend.) Constitutions.
Early in the afternoon of September 12, 1978, Thomas Sapper carried a one-foot square cardboard box into the baggage service office of *303 TWA at San Francisco Airport. He wanted the box shipped to Philadelphia on the next flight out. Raymond Downs, who had worked in baggage service for TWA on and off for six years, asked Sapper, for insurance purposes, what the contents and value of the shipment were. Sapper said "art objects" worth "$300." Downs thought the package should have been a "little heavier" if it indeed contained art. He "was suspect of the package" and became no less so when Sapper left the office somewhat hastily. He therefore took the box up to the passenger screening area and had it X-rayed. Instead of revealing an identifiable silhouette indicating the presence of a solid item, the screen showed "just a haze." This confirmed Downs's suspicion that the package contained contraband. He opened the box, discovered sticks of concentrated marijuana, and called the sheriff's office, located only several hundred yards away. Two officers arrived quickly, observed the marijuana in plain view, and with Downs's assistance located Sapper, whom they arrested in the passenger terminal.
Downs was asked about his state of mind in conducting the search. He testified that it is an airline employee's right to open any package if "we have suspicion to believe there might be something in there that is not quite normal, and also for insurance purposes ... [if] we cannot substantiate what is inside...." He claimed that no superior had ever explicitly told him such inspections were proper and that no specific internal rules existed on the subject, yet his conviction that opening "suspect" items was within his "job description" was a definite one. This conviction was apparently based on several different "directives" or "articles" published by the federal government that he had seen in the TWA baggage office. The first, which he believed issued from the Drug Enforcement Administration (hereafter DEA), allegedly authorized employee inspections "especially" when "narcotics" were suspected to be within a package. A second recognized the airlines' right to substantiate the contents of insured parcels.[1] The third was a Federal Aviation Agency skyjacker profile that was also circulated to baggage service representatives. Downs testified: "[I]f the persons fit the profile, then we know what to do...." But Downs would not agree with the suggestion that his authority to search had more to do with "security" than with substantiating claims for insurance purposes.
Finally, Downs testified that he would X-ray sometimes one, sometimes no packages in a day; that TWA gives no notice to its customers *304 that shipments are subject to search at the prerogative of the airline; and that he had little or no contact with law enforcement officials except for one DEA agent to whom he had been introduced.
Sapper invites this court to rule Downs's search unconstitutional and offers three grounds upon which to do so: 1) that governmental encouragement produced the search and prohibits viewing it as one conducted by a private citizen; 2) that unfettered searches by airline employees constitute such an invasion of privacy that the search and seizure clause should govern even if such employees are deemed private actors, citing People v. Zelinski (1979) 24 Cal.3d 357 [155 Cal. Rptr. 575, 594 P.2d 1000]; and 3) that the invasion of privacy involved in such searches violates the right to privacy guaranteed by article I, section 1, of the California Constitution.
However persuasive we may find these arguments they cannot succeed in this court until the Supreme Court repudiates the majority position taken in People v. McKinnon (1972) 7 Cal.3d 899 [103 Cal. Rptr. 897, 500 P.2d 1097], a case that is inescapably controlling here. The appellant recognizes this and urges that McKinnon has already been repudiated. But this argument is disingenuous: that portion of McKinnon holding that a police officer need not obtain a warrant before opening a closed container has indeed been impliedly overruled (see, e.g., People v. Dalton (1979) 24 Cal.3d 850 [157 Cal. Rptr. 497, 598 P.2d 467]), but that portion of the opinion holding an airline employee's search to be private and constitutional has been reaffirmed, not questioned. (Tavernetti v. Superior Court (1978) 22 Cal.3d 187, 193 [148 Cal. Rptr. 883, 583 P.2d 737].) We explain briefly why we believe we are precluded by precedent from any course but affirmance of the conviction.
In McKinnon a suspicious airline employee opened a cardboard carton labeled "personal effects" and discovered bricks of marijuana. The employee testified that he was entitled to do so pursuant to a Civil Aeronautics Board (hereafter CAB) rule designed to forestall fraudulent insurance claims. The evidence also showed, however, that the airport police had asked freight agents to "be alert" for and to open suspicious packages, and to call the police if contraband were discovered. (7 Cal.3d at p. 904.) The Supreme Court held that an unreasonable search conducted by a private individual is not the concern of the Constitution unless there is some form of active government involvement, such as joint participation, a specific request to search, or on-the-scene *305 acquiescence. (Id. at p. 912.) On the facts of the case the McKinnon court found none of the above to exist and perceived only "generalized appeals [by the police] for the assistance of" those citizens likely to come into frequent contact with drug traffic. Such appeals do not "deputize" those who respond to them; to the contrary, held the court, "detecting crime [is] a badge of good citizenship." (Id. at pp. 914-915, fn. omitted.)
The instant case is not one where the police paid a private citizen to search (People v. Tarantino (1955) 45 Cal.2d 590, 595 [290 P.2d 505]), or actually participated in the search (Stapleton v. Superior Court (1968) 70 Cal.2d 97, 100-102 [73 Cal. Rptr. 575, 447 P.2d 967]), or requested that a specific search be conducted. (Tucker v. Superior Court (1978) 84 Cal. App.3d 43, 48 [148 Cal. Rptr. 167].) Nor is there any proof that any governmental regulation required a search of Sapper's carton. (Cf. United States v. Davis (9th Cir.1973) 482 F.2d 893, 900; People v. Hyde (1974) 12 Cal.3d 158 [115 Cal. Rptr. 358, 524 P.2d 830] (boarding searches).)[2] Instead the claim here is that Downs searched Sapper's carton on the authority of three alleged government regulations that encourage but do not mandate such searches. If, as McKinnon clearly held, personal requests by DEA agents to freight handlers to "be on the alert" for suspicious packages constitute permissible "generalized appeals for assistance" that do not convert private action to state action, then this court cannot say that a printed rule with the identical message requires the opposite conclusion.
Federal law is in accord. It has been unanimously held that rule 24 of CAB Tariff 96, which provides that "All shipments are subject to inspection *306 by the carrier, but the carrier shall not be obligated to perform such inspection," merely recognizes a longstanding right of carriers to protect their own interests and does not render a carrier search a governmental search. (See, e.g., United States v. Gumerlock (9th Cir.1979) 590 F.2d 794, 799 fn. 17, cert. den. 441 U.S. 948 [60 L.Ed.2d 1052, 99 S.Ct. 2173]; United States v. Pryba (1974) 502 F.2d 391, 401 [163 App.D.C. 389], cert. den. (1975) 419 U.S. 1127 [42 L.Ed.2d 828, 95 S.Ct. 815].) If, as Downs indicated, there actually existed a DEA regulation specifically recognizing a private airline's right to search for contraband[3] this obviously would come closer to governmental involvement, but again we would be precluded from holding the Fourth Amendment applicable. In McKinnon (supra, 7 Cal.3d at p. 914) and in Gumerlock (supra, 590 F.2d at p. 800), the California Supreme Court and the Ninth Circuit held and intimated, respectively, that preventing criminal use of the airways is a legitimate private concern of the airlines that does not depend upon governmental authorization. Thus, such a DEA regulation, like rule 24 of CAB Tariff 96, would merely recognize that preexisting right. We must hold, therefore, that Downs conducted his search as a private actor.[4]
Recognizing that this might be our holding Sapper next argues that the threat to privacy inherent in airline employee searches, even if those searches are deemed "private," warrants extending People v. Zelinski (1979) 24 Cal.3d 357 [155 Cal. Rptr. 575, 594 P.2d 1000] to this case. In Zelinski a private security guard made a citizen's arrest of a suspected shoplifter and searched the woman's purse for a stolen blouse. The search produced a balloon of heroin in addition to the blouse, which led to a prosecution for possession of heroin. The Supreme Court ordered the heroin suppressed, holding that private security guards, because they regularly perform quasi-law enforcement activities and are increasingly relied on by the police to perform such public functions (id. at p. 366), pose a "particularly serious threat to privacy" (id. at p. 365) and one "comparable to that ... posed by the unlawful conduct of police officers." (Id. at p. 366.) Moreover, the searches, when conducted in the context of an arrest or detention authorized by statute, are made "under color of law" (id. at p. 367) while simultaneously "subvert[ing] state authority in defiance of its established limits." (Id. at p. 368.) This *307 combination of factors, held the court, constituted a concern of constitutional proportions.
Zelinski is distinguishable in one critical respect from the case at bar: the express premise of the former is that, the Constitution aside, a private security guard is subject to civil and criminal liability when, "absent statutory authorization," the guard takes "property from other citizens." (24 Cal.3d at p. 363.)[5] In McKinnon the court took precisely the opposite view of searches conducted by airline employees who suspect the presence of contraband. Far from unlawful, the court deemed such acts "a badge of good citizenship," and held that "... [a] common carrier, no less than any other citizen, has the right, indeed the duty, not to knowingly allow its property to be used for criminal purposes. While a carrier is bound to accept whatever freight it holds itself out as accustomed to carry (Civ. Code, § 2169), it is obviously not bound to accept freight which it is illegal to possess or transport (see Health & Saf. Code, §§ 11530 [possession of marijuana], 11531 [transportation of marijuana]). Although such freight may not present a physical hazard to other goods or the vehicle carrying them, the carrier is not required to risk the injury to its reputation and business which could well ensue from public knowledge that it permits its facilities to be used by criminals for the purpose of trafficking in narcotics. Accordingly, the carrier has the additional right to open and inspect a package which it suspects contains contraband." (7 Cal.3d at p. 914.)[6] Though we might agree that the latitude permitted airline employees in searching the property of other citizens cannot easily be reconciled with the correlative restrictions placed on store security guards the discrepancy is not of a kind warranting the conclusion that Zelinski has overruled McKinnon's pointed approval of the specific kind of inspection at issue in the instant case.[7]
*308 Sapper's final argument is that the right to privacy, as guaranteed by article I, section 1 of the California Constitution since 1974, requires a completely fresh look at the lawfulness of nonconsensual searches of closed containers by airline employees. To alter the result reached in McKinnon, however, we would have to be able to say that in its post-1974 privacy decisions the Supreme Court has indicated that it would be inclined to protect a shipper's privacy more vigorously than the carrier's right not to tolerate criminal use of its property. In fact the court has expressly stated that it continues to adhere to the ordering of priorities articulated in McKinnon. (Tavernetti v. Superior Court (1978) 22 Cal.3d 187, 193 [148 Cal. Rptr. 883, 583 P.2d 737]; see also In re Eric J. (1979) 25 Cal.3d 522, 528 [159 Cal. Rptr. 317, 601 P.2d 549].)
The judgment is affirmed.
White, P.J., and Scott, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied April 17, 1980.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] This appears to be rule 24 of Civil Aeronautics Board Tariff 96, discussed infra.
[2] It is possible that federal regulations requiring that all "checked baggage" be screened (14 C.F.R. § 121.538(b) (1979)) are applicable to "next flight out" shipments such as Sapper's. It is also probable that TWA, which must have a Federal Aviation Agency approved security plan in effect for air cargo (14 C.F.R. § 121.538(c)(3) (1979)), has an internal regulation requiring screening searches in certain instances. If so, then the Fourth Amendment would govern such searches and would impose at least a notice requirement on the airlines. (United States v. Rodriguez (6th Cir.1979) 596 F.2d 169, 173; People v. Hyde, supra, 12 Cal.3d at pp. 175-176 (conc. opn.).) But Sapper has not proven that any such mandatory regulations existed or were applied here. He did offer to call a Western Airlines employee to testify that a CAB regulation requires searches of cargo but the trial court ruled that if such a regulation existed it could be filed with the suppression motion. Sapper has yet to locate such a regulation and it probably does not exist. The only relevant CAB rule that we are aware of is permissive, not obligatory, as is discussed in the text of the opinion, infra. Thus Sapper has not met his burden of proof to show government involvement. (United States v. Gumberlock (9th Cir.1979) 590 F.2d 794, 799 (en banc), cert. den. 441 U.S. 948 [60 L.Ed.2d 1052, 99 S.Ct. 2173].)
[3] No such regulation appears in the Code of Federal Regulation, no case refers to any similar regulation, and none has been placed in the record.
[4] The third "regulation" referred to by Downs was a skyjacker profile. There is no indication that Sapper fit the profile, however, or that it played any role in the instant search, or what action, if any, it authorized baggage representatives to take.
[5] The court noted that the Legislature has seen fit to protect merchants from prosecution only when they detain a person upon probable cause, search for a weapon, and seize a stolen item, and only a stolen item, in plain view. (Pen. Code, § 490.5, subd. (e).)
[6] The court also noted that: "When a shipper consigns goods in a sealed package to a common carrier, such matters as rates, insurance values, and methods of handling are customarily determined by the carrier on the basis of the shipper's representations as to the contents of the package .... [and therefore] current tariff provisions under which regulated carriers operate in California authorize the carrier to open and inspect the package if it suspects that the nature or value of the contents does not correspond to those representations." (7 Cal.3d at p. 913.)
[7] Citing McKinnon, the court has recently reiterated its view that conduct by private citizens that is lawful and appropriate when judged independently of the search and seizure clause, will not be held to be governed by the latter. (In re Eric J. (1979) 25 Cal.3d 522, 528 [159 Cal. Rptr. 317, 601 P.2d 549].)