50 Cal.Rptr.3d 768 (2006)
144 Cal.App.4th 852
The PEOPLE, Plaintiff and Respondent,
v.
David WINDHAM, Defendant and Appellant.
No. A111600.
Court of Appeal of California, First District, Division Five.
November 8, 2006.
*770 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Supervising Deputy Attorneys General, for Plaintiff and Respondent.
David C. Coleman, Contra Costa County Public Defender, for Defendant and Appellant.
*769 GEMELLO, J.
Defendant was arrested for domestic violence against his girlfriend. While he was in jail, he placed several calls to her, which were recorded pursuant to an announced, blanket policy of recording all outgoing telephone calls by jail inmates. The prosecutor obtained recordings of the calls for use in defendant's criminal case, and the trial court denied a motion to suppress. We affirm, holding that defendant impliedly consented to the recording of his calls, and the recordings are admissible under federal and state law.

BACKGROUND
The following factual background was taken from the presentencing report. Windham went shopping with his girlfriend, M.R., and asked her to loan him money. When she refused, he followed her out of the store, got into a car with her and started driving her around. In the car, he grabbed her purse and broke the strap. He then struck her in the neck and pulled a gold chain off her neck. He parked next to a cliff and told M.R. to get out of the car. She refused. He drove further, then stopped again and demanded she have sex with him. He threatened to beat her and abandon her by the road and said he would kill her if she reported him to the police. Out of fear, she agreed. An officer observed M.R. on Windham's lap in the passenger seat of the car. As the officer approached the car, Windham threw M.R. onto the driver's seat. M.R. had a severe injury to her left eye and a swollen lip.
Windham was charged with assault by force likely to produce great bodily injury (count one; Pen.Code, § 245, subd. (a)(1)),[1] second degree robbery (count two; §§ 211/212.5, subd. (c)), corporal injury of a cohabitant (count three; § 273.5), and making a criminal threat (count four; § 422). It was alleged that he had a prior felony conviction within the meaning of section 667.5, subdivision (b) and prior felony convictions rendering him ineligible for probation (§ 1203, subd. (d)(4)).
While in custody pending trial, Windham attempted to call M.R. 83 times on the jail telephones. Twelve completed conversations to M.R. included some references to the events leading to Windham's arrest. The jail had a blanket policy of recording all outgoing telephone calls placed by inmates. Inmates were informed about this policy in various ways. The prosecutor planned to use Windham's recorded conversations as evidence in his criminal case.
Windham filed a motion to suppress the recordings. He argued that the recording and disclosure of the telephone calls violated *771 federal and state laws and that those laws mandated suppression of the evidence. In opposing the motion, the prosecutor relied primarily on a decision of this court holding that a jail inmate who makes calls from jail pay telephones despite being warned that the calls may be recorded has impliedly consented to the recording and disclosure of the calls, thus rendering the wiretapping lawful. (People v. Kelley (2002) 103 Cal.App.4th 853, 858, 127 Cal. Rptr.2d 203 (rehearing denied (Nov. 18, 2002), review denied (Jan. 22, 2003))) (Kelley). Kelley primarily applied federal wiretapping statutes, but held that the same result would be reached under state wiretapping laws.[2](Ibid.)
After an evidentiary hearing, the trial court made the following factual findings: "Three separate warnings are given to the caller using the jail pay telephones that are made available to inmates. Firstly, the rules and regulations of the jail are provided to each inmate and apparently so specify. Secondly, there is a posted sign by the telephones which in relatively large print indicates `WARNING! Calls May Be Recorded And Monitored!!!'. Finally, both parties hear a telephone recording advising that the call is being" recorded. [¶] Amongst other indications on the warning notice posted by the telephone is the insignia and name of `AT & T'. Further, the recording identifies the party speaking as `AT & T' and then gives the monitoring warning followed by instructions about accepting the collect call. There is no reason to believe that any of the 12 calls recorded as to this defendant were subject to any more, different or less warning." Windham does not challenge these factual findings on appeal. The trial court concluded that by placing the calls despite receiving these warnings, Windham impliedly consented to the recording policy. The court held the recordings were lawfully obtained under federal and state law and denied the motion to suppress.
Windham pled no contest to the corporal injury charge and the court dismissed the remaining charges and the enhancement allegation. The court sentenced Windham to three years in state prison.

DISCUSSION
Windham argues the trial court erred by denying his motion to suppress. He argues the recordings of his telephone conversations must be suppressed under the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 United States Code section 2510 et seq. (Title III), and the California Invasion of Privacy Act (Privacy Act), section 630 et seq.
On appeal of a trial court's denial of a motion to suppress, we review the court's factual findings for substantial evidence and its conclusions of law de novo. (People v. Brophy (1992) 5 Cal.App.4th 932, 936, 7 Cal.Rptr.2d 367.)

I. The Recording of Windham's Calls Did Not Violate Title III

With certain limited exceptions, Title III prohibits the unauthorized interception of "any wire, oral, or electronic communication." (18 U.S.C. § 2511, subd. (1)(a).) Title III "protects an individual from all forms of wiretapping except when the statute specifically provides otherwise." (Abraham v. County of Greenville, *772 S.C (4th Cir.2001) 237 F.3d 386, 389.) Those protections apply to prisoners and pretrial detainees. (United States v. Faulkner (10th Cir.2006) 439 F.3d 1221, 1222,1223-1224.) When information is obtained in violation of Title III, "no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial." (18 U.S.C. § 2515.) The recording of Windham's conversations with M.R. was legal under Title III only if one of the statutory exceptions to the prohibition applies.

A. Recording Calls with the Implied Consent of One Party Is Lawful Under Title III

Every federal circuit court to address the issue has concluded that Title III is not violated when a jail or prison routinely monitors and records outgoing calls placed by inmates on the institution's telephones and the inmates are put on notice of the recording policy. Most circuits have relied on the consent exception to Title III, which provides: "[i]t shall not be unlawful ... for a person acting under color of law to intercept a wire, oral, or electronic communication, where ... one of the parties to the communication has given prior consent to such interception." (18 U.S.C. § 2511, subd. (2)(c).) Those courts have concluded that an inmate who uses jail or prison telephones with knowledge of a recording policy impliedly consents to the monitoring and recording of the calls. (Faulkner, supra, 439 F.3d at pp. 1224-1226; U.S. v. Hammond (4th Cir.2002) 286 F.3d 189, 192; U.S. v. Footman (1st Cir.2000) 215 F.3d 145, 155; U.S. v. Workman (2d Cir. 1996) 80 F.3d 688, 693-694; U.S. v. Van Poyck (9th Cir.1996) 77 F.3d 285, 292; U.S. v. Horr (8th Cir.1992) 963 F.2d 1124, 1125-1126; see also People v. Loyd (2002) 27 Cal.4th 997, 1014-1015, 119 Cal.Rptr.2d 360, 45 P.3d 296 (cone. opn. of Moreno, J.).)[3]
In Kelley, supra, 103 Cal.App.4th 853, 127 Cal.Rptr.2d 203, we followed the implied consent line of cases and we adhere to that view here. "So long as a prisoner is given meaningful notice that his telephone calls over prison telephones are subject to monitoring, his decision to engage in conversations over those telephones constitutes implied consent to that monitoring and takes any wiretap outside the prohibitions of Title III." (Id. at p. 858, 127 Cal.Rptr.2d 203.)
Windham cites cases that have questioned whether it is appropriate to infer consent based simply on an inmate's knowledge that his calls will be monitored, particularly where the inmate's alternative is to make no call at all. We reiterate that "there is no reason to believe Congress intended to draw the statute so narrowly as to exclude such prisoner choices from the notion of consent." (Kelley, supra, 103 Cal.App.4th at p. 859, 127 Cal.Rptr.2d 203.) As the Eighth Circuit recently explained in arriving at the same conclusion, "Rarely are choices in life totally free from opportunity costs; something must be foregone whenever one comes to a fork in the road. The real issue is whether imposition of a condition is acceptable, so that a choice subject to that condition is considered a voluntary, consensual one. [Citation.] Because of the undeniable need to control prisoner communications to the *773 outside world, we have no hesitation in concluding that a prisoner's knowing choice to use a monitored telephone is a legitimate `consent' under [Title III]." (Faulkner, supra, 439 F.3d at pp. 1224-1225; see also People v. Davis (2005) 36 Cal.4th 510, 524-529, 31 Cal.Rptr.3d 96, 115 P.3d 417 [holding that pretrial detainees have no greater expectation of privacy than convicted prisoners].)

B. Windham Impliedly Consented to the Recording of His Calls

Windham argues his case is factually distinguishable from Kelley, supra, 103 Cal.App.4th 853, 127 Cal.Rptr.2d 203 and argues that consent cannot be inferred from the circumstances in which he made his calls. We disagree. As in Kelley, a sign warning that telephone calls might be monitored and recorded was posted by the telephones Windham used. (Kelley, at p. 859, 127 Cal.Rptr.2d 203.) As in Kelley, the telephone system played a message at the beginning of each call stating that calls might be monitored and recorded. (Ibid.) In addition, here the telephone monitoring policy was included in jail rules distributed to all inmates. (Ibid.)
Windham argues the warnings were misleading because they included references to AT & T, suggesting the monitoring might be done by the telephone company for service purposes. The sign posted by the telephones and the recorded message played during telephone calls included references to AT & T. These warnings must be construed in the context of Windham's famiharity with jail rules that included the recording policy. The inclusion of the policy in the jail rules indicates that the policy was imposed by the jail for jail purposes. The warning sign posted by the telephones is labeled "Contra Costa County Jail Inmate Phone Instructions." The warning message appears directly below that text and states in relatively large print, "WARNING! Calls May Be Recorded and Monitored!!!" The AT & T logo appears below the warning message. In the totality of the circumstances, a reasonable inmate would understand the warning to mean that jail officials would be recording his telephone calls for jail purposes. Similarly, in the context of the other warnings received by the inmate, the recorded message would be understood to refer to recording by jail officials for jail purposes.
Windham further attempts to distinguish Kelley, supra, 103 Cal.App.4th 853, 127 Cal.Rptr.2d 203 because the calls in Kelley were recorded at the specific request of a prosecutor, rather than pursuant to a blanket jail recording policy. He does not explain how the blanket nature of the recording policy vitiates his consent. Many federal decisions upholding inmate telephone call monitoring practices based on implied consent have involved routine or blanket monitoring policies. (See Faulkner, supra, 439 F.3d at pp. 1223-1224; Hammond, supra, 286 F.3d at p. 190; Footman, supra, 215 F.3d at p. 154; Van Poyck, supra, 77 F.3d p. 287; Horr, supra, 963 F.2d at p. 1126.) We conclude that the blanket nature of the recording policy does not affect our Title III analysis.

II. The Recording of Windham's Calls Did Not Violate California's Privacy Act

Windham argues that the recording and disclosure of his calls were illegal under California's Privacy Act. The Legislature enacted the Privacy Act after finding that the invasion of privacy from eavesdropping on private communication creates a serious and intolerable threat to the exercise of personal liberties. (§ 630 et seq.)

*774 A. The Privacy Act Requires the Consent of All Parties to a Call

The Privacy Act forbids wiretapping (§ 631) and electronic eavesdropping (§ 632) except by law enforcement officers where such activity was permitted prior to the enactment of the state act (§ 633) and with other limited exceptions (§ 633.5). The Privacy Act differs from Title III in that it forbids wiretapping (except by law enforcement officers (§ 633)) unless all parties to a communication consent, while Title III permits a conversation to be intercepted or recorded where only one person has consented. (People v. Conklin (1974) 12 Cal.3d 259, 270, 114 Cal.Rptr. 241, 522 P.2d 1049.) The Privacy Act is enforced by the stricture that evidence obtained by unlawfully intercepting a communication is inadmissible in any judicial proceeding except to prove a violation of the act. (§ 631, subd. (c).)[4]

B. The Privacy Act Includes an Exception for Law Enforcement Practices that Were Lawful When the Act Became Effective

Section 633, the law enforcement exception, provides that section 631 does not prohibit law enforcement officers from overhearing or recording any communication they could lawfully overhear or record before November 8, 1967, the effective date of the Privacy Act.[5](People v. Carbonie (1975) 48 Cal.App.3d 679, 684, 121 Cal. Rptr. 831.) In order to faithfully construe the law enforcement exemption, then, we must consider what was lawful before the effective date of the act.

C. The Recording of Jail Inmates' Calls with the Implied Consent of the Inmate Was Lawful When the Privacy Act Went into Effect and Is Lawful Today Under Section 633

The recording of Windham's calls would have been lawful before the Privacy Act went into effect. We rely on two lines of cases addressing the state of the law before the effective date of the Privacy Act. First, before 1967, courts expressly held that statutory and constitutional prohibitions against the recording of telephone communications did not apply where law enforcement recorded calls with the consent of one of the parties to the conversation. (People v. Canard (1967) 257 Cal. App.2d 444, 464, 65 Cal.Rptr. 15, cited in Kelley, supra, 103 Cal.App.4th at p. 860, 127 Cal.Rptr.2d 203; People v. Murphy (1972) 8 Cal.3d 349, 358-359, 105 Cal.Rptr. 138, 503 P.2d 594.) Citing Murphy, an appellate court has held that the recording of telephone conversations by law enforcement with the consent of one party falls within the section 633 law enforcement exception to section 631. (People v. Fulton (1984) 155 Cal.App.3d 91, 100, fn. 6, 201 Cal.Rptr. 879.)[6] The second body of *775 case law established that the secret monitoring and recording of the unprivileged conversations of jail inmates by law enforcement was not an unreasonable search or seizure or a violation of an inmate's right to privacy. (Donaldson v. Superior Court (1983) 35 Cal.3d 24, 27, 196 Cal. Rptr. 704, 672 P.2d 110; People v. Valenzuela (1984) 151 Cal.App.3d 180, 189, 198 Cal.Rptr. 469.)[7] It follows that the recording of calls with an inmate's implied consent was lawful as well. Therefore today the latter practice falls within the law enforcement exception of section 633.
Windham argues that the recording of his calls would have been unlawful when the Privacy Act went into effect because it would have violated the Fourth Amendment and federal and California statutes in effect at that time. We consider and reject these arguments sequentially.
Windham first reasons that Fourth Amendment jurisprudence underwent a "tectonic shift" immediately before the enactment of the Privacy Act and that the monitoring of his calls would have been unconstitutional under the new decisions. He relies on Berger v. New York (1967) 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040. "Contrary to prior cases involving the exclusion of evidence obtained by eavesdropping, Berger did not appear to rely on the fact that the eavesdropping was accompanied by a physical trespass of a constitutionally protected area." (Conklin, supra, 12 Cal.3d at p. 268, 114 Cal. Rptr. 241, 522 P.2d 1049.) Berger struck down a state eavesdropping law that did not conform to Fourth Amendment requirements; the Court did not limit its holding to situations involving a physical trespass. (Berger, at pp. 63-64, 87 S.Ct. 1873.) In Katz v. United States (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, the Supreme Court "unequivocally rejected the trespass doctrine, explaining that a constitutional right to privacy `protects people'and not simply `areas'against unreasonable searches and seizures." (Conklin, at p. 268, 114 Cal.Rptr. 241, 522 P.2d 1049.)
*776 Windham's argument is unavailing because the California Supreme Court has explicitly rejected the argument that Katz rendered unlawful (1) the warrantless recording of a telephone conversation with the consent of one of the parties (Murphy, supra, 8 Cal.3d at pp. 358-359, 105 Cal. Rptr. 138, 503 P.2d 594); or (2) the secret recording of the conversations of jail inmates (Donaldson, supra, 35 Cal.3d at pp. 29-30, 33-34, 196 Cal.Rptr. 704, 672 P.2d 110).
Next, Windham argues that the recording of telephone calls with the consent of only one party would have violated federal statutes in 1967. Windham cites section 605 of the Federal Communications Act of 1934, which provided that "no person not being authorized by the sender shall intercept any communication and divulge or publish" its contents. (Former 47 U.S.C. § 605, quoted in Malotte, supra, 46 Cal.2d at p. 63, 292 P.2d 517.) Windham asserts that while "it may be argued that AT & T was `authorized by the sender' to `intercept,' the telephone call of Mr. Windham[,] ... there is still no basis to claim that AT & T was authorized to `divulge or publish' the contents of that call." Windham's assertion is based on the premise that Windham impliedly consented to the recording of his calls by AT & T, not by law enforcement officers. As explained, we conclude that Windham impliedly consented to the recording of his calls by jail officials for jail purposes.
Finally, Windham argues that the recording of his calls would have been unlawful under former section 640, the predecessor to section 631, which was in effect before the effective date of the Privacy Act. Former section 640 penalized any person who "willfully and fraudulently, or clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire...." (Former § 640, quoted in People v. Trieber (1946) 28 Cal.2d 657, 659, 171 P.2d 1.) In Trieber, a private citizen was prosecuted for rigging up extensions from telephone wires with the consent of certain subscribers but without the consent of the telephone company. (Trieber, at p. 659,171 P.2d 1.) The Court held that the connections were unauthorized because the telephone company had not consented. (Id. at p. 662, 171 P.2d 1.) Windham cites only one case that applied Trieber to exclude telephone recordings by law enforcement from evidence in a criminal case, People v. Jones (1973) 30 Cal. App.3d 852, 853-854, 106 Cal.Rptr. 749. Jones is easily distinguished by the fact that neither party to the telephone calls consented to the recording. (Id. at p. 854, 106 Cal.Rptr. 749.) After Trieber, the Supreme Court held that there is no invasion of privacy in violation of section 640 when one of the participants to a conversation consents to or directs its overhearing or preservation. (Malotte, supra, 46 Cal.2d at p. 64, 292 P.2d 517.)
The recording of Windham's calls would have been lawful before the effective date of the Privacy Act because he impliedly consented to the recording and because they were the unprivileged calls of a jail inmate. Under section 633, Windham's motion to suppress the recordings was properly denied.

D. Windham Fails to Establish that the Recordings Should Have Been Suppressed Due to Unlawful Disclosure to the Prosecution

Windham argues that the disclosure of the recordings to the prosecutor was a violation of the Privacy Act, independent of the actual recording of the telephone calls. He relies on Tavernetti v. Superior Court (1978) 22 Cal.3d 187, 148 Cal.Rptr. 883, 583 P.2d 737, which held that section 631 prohibits "three distinct *777 and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." (Tavernetti at p. 192, 148 Cal.Rptr. 883, 583 P.2d 737.)
Section 633 creates an exception to the rule that evidence obtained in violation of any provision of 631 must be suppressed. (§§ 631, subd. (c); 633.) Therefore, even if a disclosure occurred in violation of section 631, Windham's motion to suppress was properly denied under section 633.

DISPOSITION
The judgment is affirmed.
JONES, P.J., and SIMONS, J., concur.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] We publish to correct our misstatement in Kelley, supra, 103 Cal.App.4th 853, 860, 127 Cal.Rptr.2d 203 that under California statutes wiretapping is lawful where only one party consents. The California Invasion of Privacy Act requires that all parties consent to the wiretapping. As we discuss, a recording of a conversation of a pretrial detainee like Windham and the defendant in Kelley is lawful if the inmate consents.
[3] Other circuits have relied on a law enforcement exception to Title III. (18 U.S.C. § 2510, subd. (5)(a)(ii).) Those courts reason that when prison and jail officials monitor and record inmate calls pursuant to an established policy, they are law enforcement personnel acting within the ordinary scope of their duties. (Smith v. U.S. Dept. of Justice (D.C.Cir.2001) 251 F.3d 1047, 1049-1050; United States v. Daniels (7th Cir.1990) 902 F.2d 1238, 1244-1245; United States v. Paul (6th Cir.1980) 614 F.2d 115, 117.)
[4] Windham urges that consent in section 631 has a narrower meaning than consent in Title III. We do not reach this argument because, as we discuss in part II.C, section 633 exempts the jail recording policy from the strictures of section 631.
[5] Section 633 provides: "Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits ... any district attorney, ... or police officer ... or deputy sheriff ... or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter. [¶] Nothing in Section 631, 632, 632.5, 632.6, or 632.7 renders inadmissible any evidence obtained by the above-named persons by means of overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter."
[6] At oral argument, Windham drew a distinction between the recording of telephone calls by wiretapping (intercepting a telephone conversation while it is in transit) and by recording telephone calls at the point of reception (e.g. attaching a recording device to the receiver). He argued that pre-Privacy Act cases upheld the legality of recording methods at the point of reception, but not wiretapping. We disagree. Where one party to the conversation consented to the recording, even wiretapping was lawful. In People v. Channell (1951) 107 Cal.App.2d 192, 236 P.2d 654, a sheriff's deputy "made connection with the telephone line" and listened to a telephone conversation with the consent of one party to the conversation. (Id. at p. 195, 236 P.2d 654.) The court upheld the admission of testimony about the "intercepted telephone message" under section 640, which "denouncefd] the clandestine or unauthorized tapping or connection with a telephone wire. Since [the defendant] knew the officer had made the connection and was listening the [officer's] act was neither clandestine nor unauthorized." (Id. at pp. 198, 200, 236 P.2d 654.) The California Supreme Court adopted this rationale in People v. Malotte (1956) 46 Cal.2d 59, at page 64, 292 P.2d 517.
[7] In 1982, the California Supreme Court held that a blanket policy of monitoring and recording jail inmates' conversations for the purpose of gathering evidence rather than to maintain the security of the jail violated sections 2600 and 2601. (DeLancie v. Superior Court (1982) 31 Cal.3d 865, 877, 183 Cal. Rptr. 866, 647 P.2d 142.) DeLancie represented a change in the law and was applied prospectively only. (Donaldson, supra, 35 Cal.3d at p. 27, 196 Cal.Rptr. 704, 672 P.2d 110.) DeLancie was superseded by statutory amendments, as recognized by Loyd, supra, 27 Cal.4th at pages 1008-1009, 119 Cal. Rptr.2d 360, 45 P.3d 296. In 2005, the Court held that the surreptitious recording of inmate conversations does not violate the Fourth Amendment under current interpretations of the amendment. (Davis, supra, 36 Cal.4th at p. 527, 31 Cal.Rptr.3d 96, 115 P.3d 417.)